UNITED STATES of America, Appellee,

v.

Gordon Wallace COON, Jr., Appellant.

Nos. 85–2498, 86–1142.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1986.

Decided Nov. 21, 1986.

Keith E. Uhl, Des Moines, Iowa, for appellant.

John Jarvey, Washington, D.C., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and MAGILL, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The issue in this case is whether the fine imposed upon Gordon Wallace Coon, Jr. following his entry of a guilty plea to a single count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982), should be reduced from $100,-000 to $25,000. In a letter to Coon's counsel, the Assistant United States Attorney set forth a proposed plea agreement outlining the terms of the government's offer and advising Coon that if he pleaded guilty the maximum sentence was fifteen years' imprisonment or a fine of $25,000 or both. Neither Coon's lawyer nor the Assistant United States Attorney were aware that on October 11, 1984, the maximum fine had been increased to $250,000. The district judge [1] informed them of the change the day before the entry of the plea. At that point Coon had already been interviewed by the FBI and, as inelegantly described by the agent, had "spilled his guts." In a motion under Rule 35(a) of the Federal Rules of Criminal Procedure, Coon argued that he entered a guilty plea in detrimental

---

* The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

reliance on the misinformation and that the fine should be reduced to the amount stated in the plea agreement. The district court rejected Coon's estoppel argument. We affirm.

Coon was arrested by federal officers in connection with a drug transaction, was informed that he would probably be indicted, and was released from custody. Two days later he hired a lawyer, J.E. Tobey, III. On April 25, 1985, Ronald M. Kayser, Assistant United States Attorney for the Southern District of Iowa, wrote Tobey a letter proposing a plea agreement. Under the agreement Coon would (1) plead guilty to a single count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, (2) forfeit all property he obtained during the pendency of and as a result of his narcotics trafficking, and (3) give his cooperation to the United States, which included giving truthful testimony before a federal grand jury, at trials, and to federal agents in debriefing sessions against other suppliers, potential defendants and associates, and cooperating with federal authorities in any present or future narcotics investigations. Details concerning Coon's forfeiture and cooperation were spelled out in the agreement. In exchange, the government would not bring any other drug or income tax charges against the defendant based on information he would give during the debriefing sessions, would make no recommendation regarding the sentence to be imposed by the court, would contact the Bureau of Prisons and request that it place Coon in a federal penal prisoner security system for cooperating prisoners, and would make known Coon's cooperation to the United States Parole Commission.

Kayser's letter to Tobey stated:

There are no agreements whatsoever regarding what sentence your client will or should receive. Sentencing will remain in the sole discretion of the trial court.

\* \* \* \* \* \*

Your client will enter a plea of guilty to a single count United States Attorney Information charging him with conspiracy to distribute cocaine in violation of Title 21, United States Code, Section 841(a)(1), and 846. You are advised that that crime carries a maximum sentence of 15 years imprisonment and a fine of $25,000 or both such fine and imprisonment. As I indicated, the sentence to be adjudged in this case would be within the sole discretion of the trial court.

Clerk's Designated Record at 3–4.

Effective January 1, 1985, the maximum fine for a violation of 21 U.S.C. § 846 was increased to $250,000. 18 U.S.C. § 3571(b)(1)(A). Neither the United States Attorney nor Coon's attorney were aware of the change, although Coon's attorney had researched the penalties that could be imposed under Section 846.

On September 4 and 5, 1985, Coon met with Special Agent Alvin C. Overbaugh and fully cooperated in giving information. At the hearing on Coon's Rule 35(a) motion Coon's counsel testified that, at the time Coon met with Agent Overbaugh, Coon was acting in reliance on the representations made in the plea agreement, including the statement that the maximum fine could not exceed $25,000.

Coon was scheduled to appear in court on October 25, 1985 to enter his plea. A day or two before that the judge received a copy of Kayser's letter, noticed the error concerning the maximum fine, and told Kayser. Kayser in turn told Tobey, who told Coon that the maximum fine was actually $250,000. The next day Coon appeared in court, waived grand jury indictment and entered a guilty plea.

When Coon appeared to enter the guilty plea, he stated that he was told the day before that the maximum fine was $250,-000 rather than $25,000 as was stated in Kayser's letter of April 25, 1985. He also stated that he was aware that the maximum term of imprisonment was fifteen years and that there was a $50 assessment for the Crime Victim's Fund. He informed the court that it was his voluntary decision to plead guilty and that nobody had promised him what the sentence would be.

Coon appeared for sentencing on December 6, 1985, and told the court that he remembered the proceedings on October 25, and reaffirmed his guilty plea. His counsel stated that there was no legal reason why sentence should not be pronounced. The court then sentenced Coon to five years in prison and fined him $100,000.

Coon thereafter brought a motion under Rule 35(a) of the Federal Rules of Criminal Procedure seeking to have his fine reduced to $25,000. His contention before the district court was that because the maximum fine was represented to him as, and he believed it to be, $25,000 he decided to accept the plea agreement and perform a substantial part of his end of the agreement by appearing before Agent Overbaugh. He argued that the court was estopped from imposing a fine in excess of $25,000 and that the sentence is illegal to the extent it exceeds that amount. The district court conducted a hearing, and attorney Tobey testified concerning the agreement. Tobey stated that it was his opinion that after his client had appeared before Agent Overbaugh he was "boxed in" and had no choice but to go through with the plea even though he was later told of the higher fine.

The district court ruled that the sentence was not an illegal one, that it was within the statutory maximum, and that when Coon pleaded guilty he knew the statutory maximum and, within that statutory maximum, the sentence was entirely in the discretion of the court. The motion was denied.

In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court sanctioned plea agreements, but cautioned that the conditions for a valid plea "presuppose fairness in securing agreement between an accused and a prosecutor. * * * [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 261–62, 92 S.Ct. at 498–99.

In *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), however, the Supreme Court limited the extent to which such contract law standards are applicable to the constitutional analysis of plea agreements. In *Mabry,* the prosecutor withdrew his first offer and replaced it by a second, less favorable, offer before the defendant could accept the first one. The Court found that the defendant's subsequent plea of guilty was in no sense "induced" by the withdrawn offer, *id.* at 2548, because at the time the defendant entered his plea he was fully aware that the second agreement controlled. The Court stated that "a plea bargain standing alone is without constitutional significance," *id.* at 2546, and the defendant has no constitutional right to have a plea bargain specifically enforced. *Id.* at 2548. Only when the resulting guilty plea is involuntary or when the defendant is not aware of the direct consequences of his plea may he challenge its validity. *Id.* at 2547; *see also Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). In that respect, the Court dispelled the notion that a defendant's contractual-like expectation interests are relevant to constitutional analysis. Thus, insofar as Coon's argument rests on the unfairness of "having the rules of the game change" prior to his signing the plea agreement and entering his guilty plea, it cannot stand.

Coon seeks to distinguish his situation from the one in *Mabry* on the basis of prior detrimental reliance. He does not dispute that at the time he pleaded guilty he understood the consequences of his action. Specifically, he was aware that the maximum penalty was $250,000 and that under the terms of the plea agreement the decision as to the amount of the fine was within the sole discretion of the trial judge. Instead, he argues that his dialogue with the trial judge at the time the plea was entered and at the time of sentencing are without significance because the relevant time for ascertaining the voluntariness of his guilty plea is not when he entered it, but when he performed his part of the bargain. He

claims that after he met with Overbaugh and told him everything he knew, he could no longer pursue the options of going to trial or further negotiating the terms of the plea agreement. He argues that the erroneous statement in the plea agreement concerning the amount of the fine induced his detrimental reliance prior to entering his plea such that he changed his position and could not be restored to the status quo ante by pleading not guilty and proceeding to trial. We reject these contentions and conclude that *Mabry* controls.

■ The only change in position that can be considered "detrimental reliance" is the actual entry of an involuntary guilty plea. Not until that point has the defendant been deprived of any constitutionally protected liberty interest. *See Mabry*, 104 S.Ct. at 2546. When, as in this case, the defendant learns of a change in the terms of a plea agreement prior to entering his plea, a detrimental reliance argument is inappropriate. At that stage, the defendant still has the option of pleading not guilty and proceeding to trial.

Nor is Coon's option to proceed to trial foreclosed because of his earlier cooperation with the federal agents. If his cooperation was induced by the prosecutor's misrepresentation as to the amount of the fine, then the court can determine whether the statements were involuntary and, if they were, exclude them from evidence at trial. *See Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897) (involuntary confession must be excluded from evidence; voluntariness determined by whether it was "extracted by any sorts of threats or violence [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence"); *see also Rachlin v. United States*, 723 F.2d 1373, 1377 (8th Cir.1983); *United States v. Grant*, 622 F.2d 308, 316–17 (8th Cir.1980) (court must view the totality of the circumstances and exclude defendant's statement if the product of an overborne will). With this remedy, the status quo ante is restored; Coon can enter a plea of not guilty and be in no worse position than if the plea agreement did not exist. In *Mabry*, the Court stated that as long as the defendant is not in a worse position, there is no detrimental reliance; his remedy is constitutionally adequate and he cannot demand specific performance:

> Indeed, even if respondent's plea were invalid, *Santobello* expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea; the Court made it clear that permitting Santobello to replead was within the range of constitutionally appropriate remedies. * * * It follows that respondent's constitutional rights could not have been violated. Because he pleaded after the prosecution had breached its 'promise' to him; [sic] he was in no worse position than Santobello would have been had he been permitted to replead.

104 S.Ct. at 2548, n. 11 (citations omitted).

It is also significant that Rule 11(e)(2) of the Federal Rules of Criminal Procedure provides that a plea agreement reached by the prosecutor and defendant need not be accepted by the court. Since Coon's remedy in having any incriminating statements to the federal agents excluded is constitutionally adequate, there is no reason to disregard Rule 11 and require specific performance.

■ Even if we were to hold that detrimental reliance is the appropriate standard for analyzing the voluntariness of Coon's plea, we would conclude that Coon presented insufficient evidence at the hearing on his Rule 35(a) motion to show that he detrimentally relied on the misrepresentation. In order to constitute detrimental reliance, Coon must show that the misrepresentation prejudiced him in that "the error was likely to have altered [his] decision to plead guilty." *United States v. Fuller*, 769 F.2d 1095, 1098 (5th Cir.1985). Thus, the prosecutor and defense counsel's error advising Coon of the statutory maximum fine is significant only if it was part of the inducement for Coon to perform his part of the plea agreement.

The testimony during the hearing belies Coon's present contention that the amount

of the fine induced either his acceptance of the plea agreement or his subsequent cooperation with the government. Coon testified that he could not say whether he would have entered the guilty plea if the letter had correctly stated that the maximum fine was $250,000. Posttrial Motions Tr. at 98. His counsel testified that the focus of his conversations with Coon was on the amount of time that Coon was going to serve. *Id.* at 24, 35–6, 39–40, 47. He further testified that Coon's possible sentence was greatly reduced because of the plea agreement. *Id.* at 48. The record shows that the reason Coon did not want to void the plea agreement because he wanted the benefit of the government's promise to accept a guilty plea to only a single count of conspiracy to distribute cocaine in order to lessen the number of years he would have to serve in jail. We conclude that the district court did not err in its determination that Coon voluntarily chose the bargained-for advantages of the plea agreement over the possibly less favorable result of a jury trial.

We therefore affirm the district court's denial of the Rule 35(a) motion.