**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Donald Jay KETTERING, Defendant–Appellant.**

No. 88–3047.

United States Court of Appeals, Eleventh Circuit.

Dec. 8, 1988.

Clyde Taylor, Tallahassee, Fla., for defendant-appellant.

Lyndia P. Barrett, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before HILL and FAY, Circuit Judges, and DUBINA *, District Judge.

FAY, Circuit Judge:

Donald Jay Kettering appeals the district court's order denying his motion to enforce a plea agreement. Kettering asserts that

---

* Honorable Joel F. Dubina, U.S. District Judge for the Middle District of Alabama, sitting by designation.

the district court erred in refusing to enforce the agreement because: 1) the plea agreement the defendant entered into pursuant to the representations of a Drug Enforcement Administration (DEA) Agent bound both the government and the defendant; 2) the DEA agent possessed authority to bind the prosecution to the statements made to the defendant; and 3) the defendant relied to his detriment upon the agent's assertions by cooperating with the government in its investigation of the case. The prosecution argues however, that the proposed agreement is unenforceable because Kettering has failed to show that the DEA agent had authority to enter into it or that he detrimentally relied on the agent's representations. We hold that there was no enforceable plea agreement in this case. The DEA agent had no authority to bind the prosecution through his statements. Moreover, Kettering has shown no detrimental reliance on the agent's assertions. Accordingly, the district court's order denying the motion to enforce the plea agreement is affirmed.

## I.  BACKGROUND

Donald Jay Kettering was arrested on June 23, 1987 after landing an aircraft containing 41 bales of marijuana at the Williston Airport in Levy County, Florida. He was charged in the Northern District of Florida on June 30, 1987 in a three count indictment with possession of marijuana with intent to distribute, importation of marijuana, and possession of marijuana to be introduced into the United States. Shortly after his indictment, Kettering's attorney, Stephen Johnson, began negotiating a plea agreement with the government. On July 6 and 7, 1987, Mr. Johnson communicated with Agent Ed Dickey of the DEA regarding plea negotiations. The Assistant United States Attorney (AUSA) assigned to the case did not participate in these negotiation discussions.

On July 8, 1987, Agent Dickey met with Kettering to gather information relevant to the agent's investigation of the case. Although the agent made rough notes of the meeting, the information was never record-ed in a DEA report. At the meeting, defense counsel Johnson proposed a plea agreement to Agent Dickey which provided that Kettering would plead guilty to a single count information carrying a maximum penalty of five years incarceration with no mandatory minimum provisions. Johnson drafted a letter outlining the terms of the agreement and delivered it to Agent Dickey at the meeting. However, the letter was never sent to the AUSA handling the case. It included the handwritten notation "all discussions and debriefings pursuant to Rule 11 of the Federal Rules of Criminal Procedure." The letter was signed solely by Mr. Johnson.

On July 13, 1987 Agent Dickey discussed the events of the Kettering meeting, including the proposed plea agreement terms, with the AUSA in charge of the case. Upon learning of the proposed terms the AUSA informed the agent that the United States would not approve a plea agreement with Kettering providing for a maximum penalty of five years incarceration. Subsequently, the AUSA informed defense counsel that the proposed plea agreement was unacceptable.

On July 15, 1987, Kettering filed a motion to enforce the plea agreement. The district court heard the motion on July 16, 1987 at which time Kettering was arraigned and pleaded not guilty to all three counts of the indictment. On August 11, 1987, the district court denied Kettering's motion to enforce the plea agreement, finding that he failed to establish Agent Dickey's authority to enter into it. Subsequently, on November 16, 1987, Kettering withdrew his plea of not guilty and pleaded guilty to count one of the indictment reserving his right to appeal the district court's refusal to enforce the plea agreement. The government then dismissed counts two and three of the indictment. Kettering was sentenced to ten years imprisonment, four years of supervised release, a $10,000 fine and a $50 special monetary assessment on January 15, 1988.

The district court concluded that Kettering failed to establish the authority of the DEA agent to enter into and bind the pros-

ecution to the proposed plea agreement. Pursuant to the July 16, 1987 hearing, the court found that the DEA agent was mistaken regarding his belief that he was authorized to pursue the agreement. Additionally, the district court credited the AUSA's testimony that Agent Dickey never possessed the authority to accept the plea proposal. The court relied on the standard set forth in *Johnson v. Lumpkin*, 769 F.2d 630 (9th Cir.1985) regarding enforcement of plea agreements in rendering its order. We agree with the district court's conclusions.

## II. ANALYSIS

The district court considered the testimony of several witnesses at the July 16, 1987 hearing in making its findings of fact that Agent Dickey possessed no authority to bind the government to the proposed plea agreement. Our review of the district court's factual findings is subject to the clearly erroneous test. *See* Fed.R.Civ.P. 52(a). Under this standard, we cannot displace the district court's findings with our own. *United States v. Minnesota Mining and Mfg. Co.*, 551 F.2d 1106, 1109 (8th Cir.1977). We must "make allowance for the advantages possessed by the trial court in appraising the significance of conflicting testimony and reverse only 'clearly erroneous' findings." *Graver Tank & Mfg. Co. v. Linde Air Prods.*, 336 U.S. 271, 275, 69 S.Ct. 535, 537, 93 L.Ed. 672 (1949). Moreover, an appellate court should be especially reluctant to disregard a district court's credibility choices. *Rowe v. Griffin*, 676 F.2d 524, 528 (11th Cir.1982). Mindful of the parameters of our review, we now examine whether the district court clearly erred in finding that Agent Dickey lacked authority to bind the prosecution to the plea proposal.

## A. AUTHORITY OF DEA AGENT REGARDING PLEA AGREEMENT

Rule 11 of the Federal Rules of Criminal Procedure governs the negotiation process between the federal government and a defendant known as "plea bargaining." The United States Supreme Court considers

plea bargaining "an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Generally, promises made during plea bargaining must be respected by the government. *Id.* at 262, 92 S.Ct. at 499. Moreover, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.*

Kettering asserts that these principles control the negotiations undertaken with Agent Dickey, and render the agreement enforceable because Dickey had the authority to bind the government to the five year maximum incarceration agreement. We disagree. Although the government must fulfill its promises pursuant to a valid plea agreement, if no binding agreement is ever reached initially, the government is free to fully prosecute the case. We addressed this issue in *United States v. Pleasant*, 730 F.2d 657 (11th Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984). There we stated that:

> [a prosecutor has no duty] either to plea bargain at all or to keep a plea bargain offer, once made, open. A defendant has no right to engage in plea bargaining in the first place. The offer, once made, is still in the discretion of the prosecutor. Like any offeror, he can withdraw his offer at any time, unless, perhaps, the defendant has relied on the offer and the prosecutor should be estopped from withdrawing it.

*Id.* at 664.

The Ninth Circuit in *Johnson v. Lumpkin*, 769 F.2d 630 (9th Cir.1985), expanded this point and stated that the general rule requiring governmental adherence to promises made during plea negotiations is subject to two conditions. First, the agent making the promise must be authorized to do so, and second, the defendant must detrimentally rely on the promise. *Id.* at 633. If either condition is lacking, then the agreement is unenforceable and the government may withdraw its offer. In

*Lumpkin,* the court held that a promise made by federal agents that the defendant would serve no time on state charges if he cooperated in the federal investigation was unauthorized. *Id.* at 634. Consequently, the court found that the defendant was not denied due process when he was convicted in state court. *Id.*

Similarly, in *United States v. Hudson,* 609 F.2d 1326, 1329 (9th Cir.1979) the court held that fundamental fairness concerns did not require the United States Attorney to abide by a secret service agent's promise to a defendant to drop federal counterfeit charges in exchange for his cooperation in the case. The court stated that the United States Attorney never sanctioned the agreement and the promise was clearly outside the agent's authority. *Id.* In the present case, the district court relied on the testimony of the AUSA and several other witnesses, pursuant to its hearing on the motion to enforce the plea agreement, that Agent Dickey was never authorized to accept the plea proposal. Our review of the record supports the district court's finding that the DEA agent lacked authority.

In her stipulation before the court, the AUSA stated that "I had no recollection of any conversation with Agent Dickey in which I authorized him to enunciate a plea to a one-count information with a five-year count." *Transcript* Vol. 2 p. 25. The AUSA also said that "[w]hat I told Mr. Johnson when he called ... was ... that I never authorized Agent Dickey to let this Defendant plead to a five-year maximum exposure." *Id.* In addition, she testified that "[Mr. Johnson] told me, in that conversation, that he knew that Agent Dickey

didn't have the authority to negotiate a plea agreement; and that's why he mentioned it to [another AUSA]...." *Id.* at 28.

Agent Dickey also testified at the hearing on the motion to enforce the plea agreement. He stated that at the time he went to debrief Kettering, defense counsel Johnson told Kettering that Agent Dickey had no authority to make an agreement. *Transcript* Vol. 2 p. 18. Mr. Johnson himself stipulated at the hearing that he knew that Agent Dickey did not have the authority to accept the agreement but that he understood the AUSA to have approved the deal.[1] *Id.* at 29. Thus, ample evidence in the record exists to support the district court's finding that Agent Dickey was not authorized to enter into the plea agreement.[2]. We therefore refuse to override the court's determination on this issue.

## B. DETRIMENTAL RELIANCE UPON PLEA AGREEMENT

In addition to his assertion that Agent Dickey possessed authority to bind the prosecution to the plea proposal, Kettering argues that he relied to his detriment upon the agent's representations, and therefore the district court erred in refusing to enforce the plea agreement. Kettering maintains that he has been prejudiced by his cooperation with Agent Dickey. He asserts that he disclosed crucial evidence regarding his case during the meeting with the agent; evidence which the government possesses and may use in furtherance of its investigation without fulfilling its side of the bargain. We find this argument without merit. Although Kettering did meet

1. Kettering asserts that Agent Dickey's own belief that he possessed the authority to bind the prosecution to the five year incarceration maximum should bar the government from withdrawing from the plea proposal in the interests of fundamental fairness. However, the district court found that the agent was mistaken and refused to bind the federal government to such an erroneous belief. This finding is supported by the record evidence which reveals that the AUSA never authorized the agent to accept a plea agreement, and will not be disturbed on appeal.

2. We are not unmindful of situations when agents of the government make promises or

representations to induce actual or potential defendants to cooperate or provide information concerning on-going investigations. Neither are we unaware of the strategy used by defendants or targets of investigations to make deals to their advantage. Both Rule 11 and case law attempt to harmonize these legitimate interests. We do suggest that all attorneys (prosecutors and defense counsel) and government agents should exercise great care in making certain that defendants are apprised of limitations in authority and the rules surrounding such negotiations.

with the agent, he has failed to establish any resulting prejudicial reliance.

The Eighth Circuit was faced with a similar situation in *United States v. Coon*, 805 F.2d 822 (8th Cir.1986). In *Coon*, the defendant asserted that he detrimentally relied upon the prosecution's plea agreement by fully cooperating with the government and pleading guilty to a single count of conspiracy to distribute cocaine. *Id.* at 824. The plea agreement mistakenly proposed a maximum fine of $25,000. for the offense when the actual maximum fine had increased to $250,000. However, the defendant was informed of the mistake prior to the entry of his guilty plea. The defendant argued that after he met with a special federal agent investigating the case and told him everything he knew, he had changed his position in reliance on the proposed plea agreement and could not be restored to the status quo ante by pleading not guilty and proceeding to trial upon learning of the fine increase. *Id.* at 824–825.

The court rejected these contentions and held that only the actual entry of an involuntary guilty plea can be considered detrimental reliance. *Id.* Moreover, the court found that a detrimental reliance argument is inappropriate when the defendant learns of the change in the proposed agreement prior to entry of the plea since then, he still has the option of pleading not guilty and proceeding to trial. *Id.* The court also stated that the defendant's earlier cooperation with federal agents did not foreclose his trial option. If the defendant's cooperation was induced by the misrepresented plea agreement, the court could determine whether the statements were involuntary and, if so, exclude them at trial. *Id.* Thus,

the court's remedy would restore the status quo and the defendant would be in no worse position than if the plea agreement never existed. *Id.*[3]

The same reasoning applies to the present case. Although *Santobello, supra*, requires that the prosecution enforce agreements where the promise induces the guilty plea, Kettering's guilty plea was wholly voluntary and not contingent in any respect upon Agent Dickey's statements. The record reflects that within days after Kettering's meeting with Agent Dickey, he was aware that the government did not intend to abide by the proposed agreement; that a good faith mistake had been made. *Transcript* Vol. 2 p. 27–28. Approximately four months elapsed before Kettering ultimately entered a guilty plea. The record shows that at that time, Kettering entered his plea voluntarily and intelligently, upon the advice of counsel, and with full knowledge of the consequences of the plea. *Transcript* Vol. 3 p. 23–25. Thus, Kettering cannot argue that he detrimentally relied upon the stale plea proposal in entering his subsequent guilty plea.

Similarly, Kettering's cooperation with Agent Dickey did not place him in a position where restoration of the status quo ante would be impossible. Rule 11 Fed.R. Crim.P. provides that pleas, plea discussions and related statements made therein are inadmissible in any proceeding against the defendant. As noted on the letter submitted by Kettering's attorney outlining the proposed plea agreement, the discussions at Kettering's meeting with Dickey were made pursuant to this rule. Thus, the government could not use any information it gathered during that meeting

---

**3.** Similarly, in *United States v. McGovern*, 822 F.2d 739, 746 (8th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987) the district court refused to enforce a plea agreement despite the defendant's claim of detrimental reliance. The defendant had cooperated with the United States Attorney's office for over a year in its investigation of the case before entering his guilty plea. He claimed that he could not be returned to the status quo prior to the plea agreement and therefore, specific performance of the agreement was his only remedy. *Id.* at 745–746.

The court held that permitting the defendant to proceed to trial restored his constitutional right to a fair trial even though it did not retrieve the one year of cooperation with the government. *Id.* Additionally, the court reasoned that the defendant's due process rights were not violated since neither the statements he made during the course of his plea negotiations and cooperation, nor any fruits of those statements were ever used against him. *Id.* Likewise, Kettering's argument in this respect fails.

against Kettering later. Moreover, the AUSA and Agent Dickey both testified that the information was not used in any further investigations, it was not reduced to a written report for the DEA, nor was it even needed by the government to prosecute the case. *Transcript* Vol. 2 p. 18–19, 28. Therefore, Kettering has failed to show that he suffered any detrimental reliance on the proposed agreement. Any statements he made while cooperating with Agent Dickey could be excluded in subsequent proceedings. This remedy would have restored Kettering to the status quo ante and have placed him in the same position as if the agreement had never existed were he to have pleaded not guilty and proceeded to trial.

The United States Supreme Court in *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) stated that as long as the defendant is not in a worse position, there is no detrimental reliance. The prosecutor in *Mabry* withdrew his first offer and replaced it by a second, less favorable offer before the defendant could accept the first one. The court found that the defendant's guilty "plea was in no sense induced by the prosecutor's withdrawn offer" because when he later entered his plea, he was fully aware that the second agreement controlled. *Id.* at 510, 104 S.Ct. at 2548. Thus, the Supreme Court held that a criminal defendant's acceptance of a prosecutor's proposed plea bargain does not create a constitutional right to have the bargain specifically enforced where the prosecution withdraws the offer prior to the acceptance of the guilty plea. *Id.*

Likewise, Kettering's guilty plea was not induced by Agent Dickey's representations. He was fully aware at the time of entering his guilty plea that the government refused to enforce the proposal. Moreover, the prosecution could not, and did not, use any information obtained from Kettering against him. Since Kettering was in no worse a position at the time he entered his plea than he was prior to any plea negotiations, he suffered neither prejudice nor detrimental reliance. Accordingly, he is not entitled to specific enforcement of the plea proposal.

## III. CONCLUSION

The district court properly refused to enforce the proposed plea agreement between Kettering and Agent Dickey. Kettering failed to establish that Dickey possessed authority to bind the prosecution to his representations. Furthermore, Kettering did not rely to his detriment upon the plea proposal. The government did not use the information obtained from Kettering against him in any subsequent proceeding nor did it use the information in any other investigation or matter before it. Therefore, the district court order denying enforcement of the proposed plea agreement is AFFIRMED.