**Harry Leroy GRIFFITH, Jr., Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 18015.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 25, 1993.

Marcie W. Bower, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Aundreia R. Alexander, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

Movant Harry Griffith appeals from the trial court's denial, after evidentiary hearing, of his Rule 24.035 [1] motion seeking to vacate a judgment and sentence entered on a plea of guilty to two charges of stealing property valued over $150. Movant was sentenced to seven years' imprisonment on each charge, the terms to be served consecutively. Movant appeals.

Movant's sole point is that he was entitled to relief on his Rule 24.035 motion, and the trial court erred in ruling otherwise, because movant's plea was not knowing and voluntary and movant's right to "due process" was infringed "in that movant's decision to plead guilty was induced by the state's offer that he would receive two concurrent five-year sentences, and the state violated this agreement by withdrawing the offer when movant was unable to appear in court on the date scheduled for entrance of his plea. Movant was prejudiced when he was forced to enter an open plea in which the court sentenced him to two consecutive terms of seven years."

Appellate review of the trial court's ruling on the motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 24.035(j). The findings and conclusions of the trial court are deemed clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Day v. State,* 770 S.W.2d 692, 695–96 (Mo. banc 1989).

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

The trial court's findings of fact, supported by the record, included the matters set forth in the following 10 paragraphs.

The underlying criminal case originated in Newton County and was transferred to Jasper County on change of venue. The information was in four counts, each count alleging the class C felony of stealing. The information also alleged that movant was a prior and persistent offender.

On February 11, 1991, movant's original counsel, Shara Martin, negotiated a plea bargain with the prosecutor, which called for a five-year sentence to run concurrently with the five-year sentence movant was to receive in another Jasper County case. It was further agreed that the state would not oppose a change of venue to Jasper County and would not pursue the prior and persistent offender allegations.

The case was transferred to Jasper County and was set for pretrial motions on May 28, 1991, and for trial on June 27, 1991. Counsel were notified of the settings. On May 28, 1991, neither movant nor his counsel appeared at the time specified in the order. The prosecutor appeared and stated that movant had absconded. Thereupon, the court issued a capias warrant and ordered a bond forfeiture.

Extradition proceedings were commenced. On July 11, 1991, the court was advised that movant had been apprehended and was in custody of the Jasper County sheriff. The case was set for trial and for hearing on September 5, 1991, on pretrial motions "and/or" guilty plea.

Shara Martin left the office of public defender, and Scott Pope was assigned to represent movant. Mr. Pope was also movant's attorney on the other case which had been scheduled for sentencing in mid-June and for which movant had also failed to appear.

"Between July 11, 1991, and September 5, 1991," Mr. Pope was informed that since movant was an absconder and did not appear for sentencing in front of the court in the other case, the prosecuting attorney was withdrawing from the plea agreement. The prosecutor informed Mr. Pope that he was considering filing "failure to appear" charges and that there were other charges under investigation. On September 5, 1991, the prosecutor informed Mr. Pope that the only thing the prosecutor would do would be to dismiss other charges which were pending and not file other charges which were under investigation if movant made an "open" plea of guilty on two counts of stealing.

Mr. Pope thoroughly reviewed the file prior to September 5, 1991, and formed the opinion that the state had a substantial case. Mr. Pope tried to get the prosecutor to change his mind on the open plea and give movant a better plea offer, but the prosecutor said that was all he was going to do.

Mr. Pope discussed all this information with movant and informed movant "that in his professional opinion that pleading guilty to two counts would be about the best plea offer he could get." Movant acknowledged that Pope discussed "all these alternatives" with him on September 5, 1991, prior to the guilty plea hearing. "Although movant was unable to understand how the prosecutor could withdraw the plea agreement even though he was an absconder," Mr. Pope advised him that it could be done. Movant acknowledged that Mr. Pope advised him that if he went to trial as a prior and persistent offender and was convicted, the punishment could be enhanced. The alternative was to plead to the two counts and "throw himself on the mercy of the court and hope for a lower sentence." Movant agreed to that procedure.

On September 5, 1991, the parties appeared before the court. The prosecutor dismissed two counts of the information and announced that he wished to proceed on the other two counts. The court conducted an exhaustive explanation on the range of punishment for the two charges. At the hearing on the Rule 24.035 motion, movant acknowledged that at the guilty plea hearing he fully understood all the sentencing procedures, the range of punishment, and the meaning of concurrent or consecutive sentencing.

At the motion hearing, movant claimed that during the guilty plea hearing attorney Pope told movant not to mention the aborted plea agreement because it would make the judge mad. The only evidence to support that claim is the testimony of movant. The trial court did not believe that testimony. To the contrary, the guilty plea transcript shows that movant was given ample opportunity to say anything he desired and in fact he did volunteer a great deal of information. Movant was given an opportunity, both before the plea of guilty was accepted and after sentence was imposed, to make any comment he chose with regard to either Mr. Pope or Ms. Martin, and he had no complaint.

The "conclusions of law" of the trial court included the following:

The record would support the conclusion that the prosecuting attorney intended all along to honor the agreement of February 11, 1991. The part of the agreement which called for the change of venue to Jasper County proceeded without objection. The prosecuting attorney appeared on the date set aside for motions on May 28, 1991. However, movant did not appear then, but had absconded and had left the state. The prosecuting attorney was required to commence extradition proceedings to have him returned to the State of Missouri. Apparently, movant contends that the State is stuck with this agreement no matter how many crimes he commits in the meantime and how long he is gone from the State of Missouri. There is no duty on the prosecutor to keep a plea bargain open indefinitely hoping that some day a defendant will return. *Stokes v. State*, 688 S.W.2d 19, 22 (Mo.App.1985). It would certainly seem that implicit in every plea agreement that a part of the agreement is that the defendant must appear in Court when ordered to do so to enter the plea. If there was a plea agreement on February 11, 1991, the movant breached that agreement and the prosecutor may withdraw from a plea agreement when the defendant does not comply with his part of the bargain. *State v. Price*, 787 S.W.2d 296, 300 (Mo.App.1990).

For the reasons which follow, this court holds: Movant's point is factually flawed and there was no infringement of his constitutional right to "due process"; movant's decision to plead guilty was not induced by the plea agreement from which the prosecutor withdrew after defendant absconded prior to entry of a plea; movant was not unable to appear in court on the date originally scheduled for entry of the plea; movant was not forced to enter the plea which he did enter on September 5, 1991; the plea was knowing and voluntary and was not tainted by the prosecutor's withdrawal from the original plea agreement.

The principal authority supporting this holding is *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

In *Mabry*, a federal habeas corpus proceeding, petitioner Johnson sought relief on the ground that his custody was in violation of the Federal Constitution. The District Court dismissed the petition, the Court of Appeals reversed the dismissal, and the Supreme Court reversed the judgment of the Court of Appeals.

The federal proceeding stemmed from a criminal prosecution in a state court in Arkansas. The state prosecutor proposed a plea agreement to Johnson's attorney. Johnson told his attorney he would accept the proposal, and the attorney called the prosecutor and communicated Johnson's acceptance of the offer. The prosecutor then told Johnson's attorney that a mistake had been made, and the prosecutor withdrew the offer.

The case proceeded to trial, but a mistrial was declared and plea negotiations resumed. The prosecutor made a second offer, which was accepted. Johnson entered a plea of guilty and was sentenced in accordance with the second agreement which was less favorable to him than the original agreement from which the prosecutor had withdrawn. The Supreme Court rejected Johnson's assertion that his acceptance of the prosecutor's original offer created for him a constitutional right to have the original plea agreement specifically enforced.

At 467 U.S. at 507–08, 104 S.Ct. at 2546 the court said:

A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

At 467 U.S. at 508–09, 104 S.Ct. at 2546–2547 the court said:

[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence—because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange. It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.

467 U.S. at 509, 104 S.Ct. at 2547 the Court quoted the following language from a prior decision:

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Also 467 U.S. at 509, 104 S.Ct. at 2547 the court said:

[O]nly when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause. . . . [T]he condi-tions for a valid plea "presuppose fairness in securing agreement between an accused and a prosecutor. . . . The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." (Citation omitted.) It follows that when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand: [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

The Court held that Johnson's plea "was in no sense induced by the prosecutor's withdrawn offer," and that at the time Johnson pleaded guilty he knew that the prosecution would recommend the sentence which was in fact imposed. The court said that Johnson pleaded guilty with full awareness of the consequences.

467 U.S. at 510, 104 S.Ct. at 2548 the court said:

Respondent's plea was thus in no sense the product of governmental deception; it rested on no 'unfulfilled promise' and fully satisfied the test for voluntariness and intelligence.

*Thus, because it did not impair the voluntariness or intelligence of his guilty plea, respondent's inability to enforce the prosecutor's offer is without constitutional significance. Neither is the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer relevant.* The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty. Here respondent was not deprived of his liberty in any fundamentally unfair way. Respondent was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now. (Emphasis added.)

In the case at bar, the transcript of the guilty plea hearing shows that movant entered his plea voluntarily and intelligently. Prior to accepting the plea, the court fully informed movant of his constitutional rights. During the guilty plea hearing, the following occurred:

THE COURT: The Court intends to accept the plea in this case and the Court has made the following docket entry to this point. And prior to announcing that docket entry and findings, I understand, gentlemen, there is no plea agreement in this case; is that correct?

MR. POPE: That is correct, Your Honor.

At the guilty plea hearing, movant testified that he was aware of the range of punishment, that he had no complaints with respect to the conduct of his attorneys Martin and Pope, that no one was forcing him to plead guilty, and that he was pleading guilty of his own free will.

At the hearing on the motion, movant admitted that he knew the prosecutor had withdrawn from the original plea agreement and that he had such knowledge, obtained from attorney Pope, prior to the guilty plea hearing.

It is unnecessary to determine whether the conduct of movant in absconding justified the prosecutor's withdrawal, although such justification seems manifest. Movant's plea was voluntary and intelligent. Under *Mabry*, movant's inability to enforce the prosecutor's offer "is without constitutional significance," and there is no "relevance" in the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer.

Movant's point makes no complaint that he was deprived of effective assistance of counsel at the guilty plea hearing. He makes no complaint that the prosecutor failed to honor the subsequent plea agreement, if such it was, which immediately preceded the entry of the plea. Movant could not have been induced to plead *guilty*, as his point contends, by the prosecutor's withdrawn offer, because he knew of the withdrawal prior to the entry of his guilty plea. Although the point alleges that movant was unable to appear in court when originally scheduled to do so, the record shows that he absconded. Movant was not forced to enter his guilty plea.

The findings and conclusions of the trial court are not clearly erroneous and, indeed, are fully supported by the record. In addition to *Mabry*, the following authorities support this holding: *U.S. v. Kettering*, 861 F.2d 675, 680 (11th Cir.1988); *U.S. v. Papaleo*, 853 F.2d 16, 19–20[4] (1st Cir. 1988); *Stokes v. Armontrout*, 851 F.2d 1085, 1089–1090 (8th Cir.1988); *U.S. v. McGovern*, 822 F.2d 739, 746[8] (8th Cir.1987); *U.S. v. Coon*, 805 F.2d 822, 824 (8th Cir. 1986); *State v. Simms*, 465 So.2d 769, 777–778[8, 9] (La.App. 5th Cir.1985); *Allen v. State*, 465 So.2d 1088, 1090[2] (Miss.1985); *State v. O'Leary*, 517 A.2d 1174, 1178–1179[2] (N.H.1986); *State v. Bogart*, 788 P.2d 14, 16[4] (Wash.App.1990). See, generally, 16 A.L.R.4th 1089 (Right of prosecutor to withdraw from plea bargain prior to entry of plea.)

The judgment is affirmed.

MONTGOMERY, P.J., and PREWITT, J., concur.