# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KP-01311-SCT

*BILLY M. CRUSE*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/95 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER III |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFERY A. KLINGFUSS |
| DISTRICT ATTORNEY | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 6/26/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

Billy M. Cruse pled guilty to two counts of burglary of a building and one count of possession of burglary tools. Cruse pled guilty to these charges but later filed a petition for post-conviction relief wherein he alleged that he was unlawfully sentenced as a habitual offender; the State failed to honor a promise made by the Sheriff of Tishomingo County; and the sentences imposed by the trial court were ambiguous. The trial court summarily dismissed the petition and denied all relief. Cruse now appeals to this Court.

## STATEMENT OF FACTS

On February 15, 1992, Cruse was arrested and charged with two counts of business burglary and one count of possession of burglary tools. Cruse later pled guilty to all counts and was sentenced to serve

seven years as a habitual offender on Count I of the indictment; seven years (non-habitual) on Count II to run consecutively with Counts I and III; and five years on Count III of the indictment. The trial court conditionally suspended the five-year sentence on Count III.

Cruse later filed a Motion for Post-Conviction Relief wherein he alleged that he should not have been sentenced as a habitual offender because he did not specifically plead guilty to the habitual charge of the indictment; the State failed to honor a promise made to Cruse by the Sheriff of Tishomingo County; and that an ambiguity exists in the sentences imposed by the trial court. The trial court summarily dismissed the petition and denied all relief. Aggrieved, Cruse now appeals to this Court, citing the following issues:

> **I. WHETHER CRUSE WAS ENTITLED TO AN EVIDENTIARY HEARING.**

> **II. WHETHER CRUSE WAS PROPERLY SENTENCED AS A HABITUAL OFFENDER.**

> **III. WHETHER THE SENTENCES IMPOSED BY THE TRIAL COURT WERE AMBIGUOUS.**


**DISCUSSION OF LAW**

**I. WHETHER CRUSE WAS ENTITLED TO AN EVIDENTIARY HEARING.**

Cruse now argues that the trial court erred in refusing to conduct an evidentiary hearing to determine whether Johnny Nunley, former Sheriff of Tishomingo County, made certain promises regarding Cruse's sentences. Cruse alleges that Nunley promised that he would receive five-year sentences on each count if he would aid law enforcement in making drug arrests. Nunley allegedly promised that the sentences would be suspended if Cruse agreed to banish himself from Tishomingo County.

However, while Cruse was out on bond on the initial three charges, he was arrested on four additional burglary charges. Cruse argues that he again agreed to cooperate and Nunley promised that the four additional charges would be dismissed. Cruse alleges that the second promise was made in the presence of Chief Deputy Bob McCarthy, Deputy Ricky Brazil, and Investigator Terry Jones.

Nunley later denied making the promises. As a result, defense counsel advised Cruse that it would be "futile to try to get the deputies and investigator to testify against the Sheriff"and therefore advised Cruse to accept the plea offer by the State.

In *Milam v. State*, 578 So. 2d 272, 273 (Miss.1991), this Court held that no evidentiary hearing is required for post-conviction cases involving "pure questions of law" or "where there are no facts disputed or disputable." *See also*, *Brooks v. State*, 573 So. 2d 1350, 1352 (Miss.1990); *Jordan v. State*, 577 So. 2d 368, 369 (Miss.1990); *Garlotte v.State*, 530 So. 2d 693, 694 (Miss.1988), *rev'd on other grounds*, 115 S.Ct. 1948 (1995). Miss. Code Ann. § 99-39-11 (2)(1972) states:

> (2) if it plainly appears from the face of the motion, any annexed exhibits and the prior

proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified.

However, "if the application meets [the] pleading requirements and presents a claim procedurally alive 'substantial[ly] showing denial of a state or federal right' the petitioner is entitled to an in court opportunity to prove his claims." *Jordan v. State*, 577 So. 2d 368, 369 (Miss.1990). Although Cruse alleges that promises were made by Nunley, the trial court had only Cruse's affidavit. Cruse, however, has included the affidavit of Bob McCarley, Chief Deputy Sheriff of Tishomingo County with his appellate brief. McCarley alleges that he "was aware that Nunley did make a plea promise to . . . Cruse if he would cooperate in certain situations." McCarley states that he did not remember who was present when the promise was made, but indicated that to his knowledge the promise was not kept. Attached to Cruse's rebuttal brief is the affidavit of James D. Logan wherein Logan alleges Chief Deputy McCarley told him that Nunley had made promises to Cruse. Logan also alleges that Investigator Terry Jones acknowledged that he was present when the promises were made and knows of the exact terms of the promises made to Cruse.

These affidavits, however, were not presented to the trial court. Moreover, during the guilty plea hearing, Cruse specifically stated that no promises or threats had been made to him. This Court has repeatedly held that "a trial court cannot be put in error on a matter not presented to the court for decision." *Chase v. State*, 645 So. 2d 829, 846 (Miss.1994), *cert. denied*, 115 S.Ct. 2279 (1995), *reh'g denied*, 116 S.Ct. 20 (1995); *Jones v. State*, 606 So. 2d 1051, 1058 (Miss.1992); *Crenshaw v. State*, 520 So. 2d 131, 134-35 (Miss.1988). Cruse and his attorney were aware of the alleged promises at the time of the guilty plea, yet neither brought this matter to the attention of the trial court. This issue is therefore waived.

Notwithstanding the failure of Cruse to present affidavits to the trial court, this Court is faced with two affidavits which allege that Nunley made certain promises. In seeking enforcement of those promises, Cruse relies on *Santobello v. New York*, 404 U.S. 257 (1971), wherein the Supreme Court held:

> . . . when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.

*Id.* at 433.

However, Cruse alleges not that he was involved with plea negotiations with the District Attorney's office, but rather with the Sheriff of Tishomingo County. Cruse also relies on the analysis set forth in *United States v. Kettering*, 861 F.2d 675 (11th Cir. 1988), where the defendant sought to enforce a plea agreement made by a DEA agent. That court conducted the following two-pronged inquiry to ascertain whether the plea agreement was enforceable:

> . . . [The general rule requiring governmental adherence to promises made during plea negotiations is subject to two conditions. First, the agent making the promise must be authorized to do so, and second, the defendant must detrimentally rely on the promise. If either condition is lacking, then the agreement is unenforceable and the government may withdraw its offer.

*Id*. at 677 (*quoting **Johnson v. Lumpkin***, 769 F.2d 630 (9th Cir. 1985)).

The initial issue under the ***Kettering*** analysis is whether Nunley possessed the authority to conduct plea negotiations with criminal defendants. A review of URCCC 8.04 (1996) does not indicate that law enforcement officers possess such authority. The only government officer addressed by the rule is the prosecuting attorney. Therefore, the initial issue is whether the Sheriff possessed the authority to enter into plea negotiations.

In ***Boyington v. State***, 389 So. 2d 485 (Miss.1980), MBN Agent Pierce and the District Attorney agreed to recommend that Boyington receive probation after he agreed to work as an undercover informant. Although the circuit court was aware of the agreement, the trial judge refused to accept the recommendation. Thereafter, Boyington proceeded to trial and following conviction received an eight-year sentence. After review, this Court held that "justice requires that the judgment of the lower court . . . be vacated . . . and that the appellant be placed on probation." ***Id.*** at 491.

***Boyington***, however, is clearly distinguishable from the case *sub judice*. In ***Boyington***, as in ***Santobello***, the prosecuting attorney was involved in the plea negotiations. Here, there is no indication that the district attorney's office was involved or approved the alleged promises made by Nunley.

Moreover, under the analysis utilized in ***Kettering*** and ***San Pedro v. United States***, 79 F.3d 1065 (11th Cir.1996), *cert. denied*, 117 S.Ct. 431 (1996), an appellant must demonstrate detrimental reliance. However, in ***Kettering***, the court held that "a detrimental reliance argument is inappropriate when the defendant learns of the change in the proposed agreement prior to entry of the plea since then, he still has the option of pleading not guilty and proceeding to trial." ***Id.*** (*quoting **United States v. Coon***, 805 F.2d 822, 824-25 (8th Cir. 1986)). Cruse admits that he was informed prior to the guilty plea hearing that Nunley denied making the alleged promises and upon the advice of counsel, elected to accept the plea offer by the State. As in ***Kettering***, Cruse was aware that the government did not intend to abide by the alleged promises made by Nunley. Therefore, Cruse's guilty plea was "wholly voluntary and not contingent upon [Sheriff Nunley's promises]."

In ***Mabry v. Johnson***, 467 U.S. 504 (1984), the Court held that as long as the defendant is not in a worse position, there is no detrimental reliance. There, the prosecutor withdrew his first offer and made a second less favorable offer to the defendant. The Court held that the defendant's guilty plea was not induced by the withdrawn offer because the defendant was aware that the second agreement controlled when the guilty plea was entered. ***Id.*** at 510. Here, as in ***Mabry***, Cruse was aware that the plea offer extended by the assistant district attorney, not the alleged promises by Nunley, controlled.

Therefore, even if this Court were to remand for an evidentiary hearing and utilized the two-pronged ***Kettering*** inquiry, Cruse would not prevail. Regardless of Nunley's alleged promises, Cruse failed to bring this matter to the attention of the trial court. Moreover, Cruse affirmatively indicated that no promises had been made to him and elected to accept the plea offer extended by the prosecution. This issue is without merit.

### II. WHETHER CRUSE WAS PROPERLY SENTENCED AS A HABITUAL OFFENDER.

Cruse next argues that he was not properly sentenced as a habitual offender because the trial court failed to advise him that he had a right to plead separately to the enhanced charge; that he had a right to challenge the prior convictions contained in the indictment; that it is the burden of the prosecution to prove prior convictions beyond a reasonable doubt; or require him to plead "guilty" or "true" to the prior convictions.

Cruse admits that he was unable to locate Mississippi authority to support the argument that a separate *Boykin* examination is required to be conducted with regard to an enhanced charge. Cruse, however, relies on *Government of Virgin Islands v. George*, 741 F.2d 643 (3d Cir. 1984) and *Long v. McCotter*, 792 F.2d 1338 (5th Cir. 1986).

In *George,* the Court held that under the Virgin Islands Habitual Criminals Statute, before a defendant is asked to admit to previous convictions, the court must personally address the defendant to determine whether the consequences of such an admission are understood. 741 F.2d 643, 649 (3rd Cir. 1984). However, in *Long*, the Fifth Circuit noted that in *Neyland v. Blackburn*, 785 F.2d 1283 (5th Cir. 1986), *cert. denied*, 479 U.S. 930 (1986), it had considered, but did not decide, whether *Boykin* requires an affirmative showing in the trial court record that a defendant knowingly and intelligently entered an enhancement plea. In *Neyland*, that Court chose rather to utilize "an approach . . . which resolves the validity of such admissions under an effective assistance of counsel analysis rather than under the standards ordinarily applicable to accepting guilty pleas." The *Neyland* court examined the totality of the circumstances to ascertain whether the petitioner was aware of the consequences of his counsel's admissions.

In *Keyes v. State*, 549 So. 2d 949 (Miss.1989), the defendant pled guilty to six separate charges. During the guilty plea hearing, the circuit court determined that the pleas were voluntary and sentenced Keyes as a habitual offender. However, Keyes argued that he should have been given a separate hearing on his habitual offender status. This Court held:

> Where the defendant has been convicted after jury trial, the recidivism hearing will indeed be separate and subsequent. But, where the defendant enters a plea of guilty, nothing in the rule mandates a *separate* hearing. The rule provides only that, after entry of the plea, "a hearing . . . will then be conducted . . . ."

In the case *sub judice*, four prior convictions were set forth in the indictment to meet the requirements of Miss. Code Ann. § 99-19-81 (1972). During the guilty plea hearing, Cruse indicated that he had been provided with a copy of the indictment and had read or had the indictment read to him. Cruse was specifically questioned by the trial court about the habitual portion of the indictment and indicated that he understood this portion of his sentence.

Although Cruse did not specifically plead "true" to the four prior convictions used to enhance his sentence on Count I, nothing requires him to do so. URCCC 11.03 (1996)[1] requires the following:

> 3. If the defendant is convicted or enters a plea of guilty on the principal charge, a hearing before the court without a jury will then be conducted on the previous convictions.

Cruse voluntarily entered his guilty plea and was advised of the consequences of doing so. Moreover, Cruse was specifically advised by the trial court of the consequences of the habitual enhancement and

chose not to challenge the prior convictions or object to their use. There is nothing in this record to indicate that Cruse did not understand the nature or the consequences of his guilty plea. This issue is without merit.

### III. WHETHER THE SENTENCES IMPOSED BY THE TRIAL COURT WERE AMBIGUOUS.

This Court has repeatedly held that an ambiguity in criminal sentencing "must be resolved in favor of the accused." *State v. Willis*, 539 So. 2d 1043, 1045 (Miss.1989); *Johnson v. State*, 260 So. 2d 436 (Miss.1972); *Anderson v. State*, 288 So. 2d 852, 855 (Miss.1974). However, an examination of the sentences imposed by the trial court in the present case reflects no ambiguity.

During the guilty plea hearing, the trial court sentenced Cruse to serve seven years on Count I as a habitual offender pursuant to Miss. Code Ann. § 99-19-81 and therefore imposed the maximum term of imprisonment without benefit of probation or parole. On Count II of the indictment, Cruse was sentenced to serve seven years to run consecutive to the sentence in Count I. On Count III of the indictment, Cruse was sentenced to serve a five-year term to run consecutive to the sentences imposed on Counts I and II. The five-year sentence for Count III was subsequently suspended by the trial court upon recommendation by the State.

After sentencing, the trial court made several comments regarding the actual amount of time Cruse would be required to serve. Cruse, however, argues that these statements rendered the sentences ambiguous. Presented in a disjointed fashion these comments appear to present somewhat of an ambiguous picture regarding the actual time Cruse would serve. However, when placed in proper context, it is clear that the trial court was merely estimating the amount of time Cruse would actually serve given current parole policy.

Despite the statements by the trial judge, the sentences remained the same. There is simply nothing ambiguous about the sentences imposed by the trial court during the guilty plea hearing or in the sentencing order. This issue is without merit.

### CONCLUSION

Cruse challenges the entry of his guilty plea on several bases. However, no evidentiary hearing is warranted; Cruse was properly sentenced as a habitual offender; and the sentences imposed were unambiguous. Cruse is therefore not entitled to any relief from his voluntary and intelligent guilty plea.

**DENIAL OF POST-CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE AND ROBERTS, JJ., CONCUR. MILLS, J., NOT PARTICIPATING.**

---

1. Formerly Rule 6.04 of the Mississippi Uniform Rules of Circuit Court Practice.