**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

vs.

JERRY D. HURST,

      Defendant-Appellant.

No. 97-7129
(D.C. No. 97-CR-36-S)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

Defendant-Appellant Jerry D. Hurst appeals the judgment entered on his guilty plea to a single count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was sentenced to 135 months of imprisonment and five years of supervised release. On appeal, he contends that (1) the district court should have allowed him to withdraw his guilty plea to the conspiracy count and enforced an oral plea agreement to a lesser offense; (2) his attorney provided ineffective assistance in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

advising him to plead guilty without attempting to enforce this agreement; and (3) the court improperly calculated his sentence under the Sentencing Guidelines. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), and we affirm.

Background

On June 4, 1997, agents of the Drug Enforcement Administration ("DEA") arrested Mr. Hurst during a controlled delivery of four pounds of methamphetamine in a motel room in Henryetta, Oklahoma. Shortly thereafter, DEA Agent Michael Bulgrin told Mr. Hurst that, if he cooperated with law enforcement, Agent Bulgrin would talk to the United States Attorney's office about seeking leniency. See Aplt. App. at 143. The parties agree that Agent Bulgrin and Assistant United States Attorney Douglas Horn ("AUSA Horn") discussed allowing Mr. Hurst to plead guilty to a phone count, 21 U.S.C. § 843(b), which carries a statutory maximum of four years imprisonment, in exchange for his full cooperation. See Aplt. Br. at 5; Aple. Br. at 3; Aplt. App. at 145. However, they disagree over whether Agent Bulgrin was authorized to reach an oral agreement with Mr. Hurst, compare Aplt. Br. at 7 with Aple. Br. at 9-10, and whether "full cooperation" meant assisting in the arrest of all Mr. Hurst's suppliers and buyers, or merely Steven Tankersly, the person to whom the four pounds of methamphetamine were to be delivered. Compare Aplt. Br. at 24 with

Aple. Br. at 3.

After speaking with Agent Bulgrin but before signing a written plea agreement or retaining counsel, Mr. Hurst agreed to cooperate with law enforcement. See Aplt. Br. at 8; Aple. Br. at 4; Aplt. App. at 145. He made several recorded telephone calls to Mr. Tankersly, which did not lead to an arrest. He subsequently retained an attorney, Timothy Maxcey, to represent him, and on July 15, 1997, Mr. Maxcey met with AUSA Horn to draft a plea agreement. The proposed written agreement initially required Mr. Hurst to plead guilty to a one-count information alleging conspiracy with intent to distribute methamphetamine in violation of 18 U.S.C. § 371. However, when Mr. Maxcey asked that the agreement be amended to reflect oral discussions regarding the phone count, AUSA Horn complied. On July 17, Mr. Maxcey returned a copy of the plea agreement, which he and Mr. Hurst had signed, to the U.S. Attorney's office.

At about this time, DEA agents learned that Mr. Hurst was obstructing their investigation by warning his chief methamphetamine supplier, Salvador Hernandez (a.k.a. "Chava"), that he was cooperating and that a warrant had been issued for Chava's arrest. See Aplt. App. at 151-52. Concerned that Mr. Hurst sought to impede the DEA operation, AUSA Horn requested that he submit to a polygraph test. Mr. Hurst took and failed the polygraph in Oklahoma City on July 21. The next day, AUSA Horn called Mr. Hurst and Mr. Maxcey to his office and

informed them that, because Mr. Hurst had lied about his cooperation, the government would not enter into the plea agreement. Neither AUSA Horn nor any other representative of the U.S. Attorney's office signed the document. See Aplt. App. at 66.

On the advice of his attorney, Mr. Hurst pled guilty to a single count of conspiracy to possess with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1) and 846. Before the plea was entered, the court apprized Mr. Hurst of his rights, asked whether he understood them, and received assurances that he had not been forced, threatened, or promised anything in return for his plea. See Aplt. App. at 21-25. However, the record reveals some confusion on Mr. Hurst's part about the status of the plea negotiations. When the judge asked whether the plea arose from an agreement, Mr. Hurst initially responded that it did. See id. Lawyers for both sides quickly interjected that there was no agreement, and, after being asked once more whether he wanted to plead guilty without an agreement, Mr. Hurst responded, "Yeah. I'm sorry." Id. at 25-26. He thus pled guilty to the indictment without a plea agreement.

After entering his plea but before sentencing, Mr. Hurst hired a new attorney. On September 15, 1997, he filed a motion to withdraw his plea of guilty to the conspiracy count and enforce an alleged oral plea agreement, which the court denied by minute order. See id. at 77. After hearing testimony by Mr.

- 4 -

Maxcey, Agent Bulgrin, and others at sentencing, the court denied Mr. Hurst's oral motion to reconsider. See id. at 160.

The sentencing court calculated Mr. Hurst's criminal history as Category III because he had four criminal history points; the corresponding Sentencing Guideline range, based on a total offense level of 31, was 135 to 168 months. The Presentence Report ("PSR") attributed one criminal history point to Mr. Hurst's 1993 conviction for "wet reckless" driving in San Luis Obispo, California, Municipal Court ("SLOM Court") and added two more points because he was subject to a probation violation warrant at the time he committed the charged conduct. At his sentencing hearing, Mr. Hurst objected to the PSR's criminal history calculation because he believed USSG §§ 4A1.2(a)(4) and (c)(1) excluded "wet reckless" violations and because the SLOM Court recalled the warrant after learning that he had served two days in an Oklahoma county jail. Testimony at the sentencing hearing cast doubt on Mr. Hurst's characterization of the warrant issue. Most significantly, because Mr. Hurst failed to notify the SLOM court that he had served his time in Oklahoma, the warrant was not recalled until September 29, 1997; thus, it was still outstanding when DEA agents arrested Mr. Hurst on June 4. After hearing this and other evidence, the court adopted the PSR's criminal history calculation and sentenced Mr. Hurst.

## Discussion

I.  Plea Agreement

According to Mr. Hurst, the district court made four errors with respect to the enforcement of an alleged oral plea agreement.  He contends that the court (1) failed to ensure that his guilty plea was voluntary because it did not sufficiently investigate his confusion over whether a plea bargain existed; (2) erred in declining his motion to enforce a purported oral agreement with the government; (3) abused its discretion in refusing to allow him to withdraw his guilty plea; and (4) failed to develop a sufficient factual record to facilitate appellate review.

To guarantee that a guilty plea is knowing, intelligent, and voluntary, a district court must determine that the defendant understands, inter alia, the nature of the charges, the consequences of his plea, and his right to proceed to trial.  See Fed. R. Crim. P. 11(c); United States v. Gigot, 147 F.3d 1193, 1197 (10th Cir. 1998); United States v. Wade, 940 F.2d 1375, 1377 (10th Cir. 1991).  We review compliance with Rule 11 de novo and must reverse if an error detrimentally affected the defendant's substantial rights.  See Gigot, 147 F.3d at 1197.  Mr. Hurst alleges that his Rule 11 hearing was defective because the district court did not adequately explore whether a plea agreement existed.  We find no error because the district court twice asked Mr. Hurst whether he wanted to plead guilty without an agreement and only accepted his plea after receiving assurances that he did.  See Aplt. App. at 25-26.  Moreover, even if the judge should have

conducted a more exhaustive investigation at the Rule 11 hearing, this error was cured by testimony at sentencing which established that the plea negotiations had foundered before Mr. Hurst entered his plea. We therefore conclude that Mr. Hurst knowingly, intelligently, and voluntarily pled guilty to the conspiracy count.

Whether the government violated an alleged oral plea agreement is a question of law that this court reviews de novo. See United States v. Brye, 146 F.3d 1207, 1209 (10th Cir. 1998). Yet, before considering whether a breach occurred, we must first determine that an agreement existed because "the government is held only to those promises that it actually made to the defendant." United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994). Moreover, "a petitioner asserting the existence of a bargain outside the record and contrary to his own statements under oath bears a heavy burden." United States v. Hauring, 790 F.2d 1570, 1571 (11th Cir. 1986).

Only if we conclude that an agreement existed do we consider the nature of the government's promise and "evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered." Brye, 146 F.3d at 1210. "[T]he party who asserts a breach of a plea agreement has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence." Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir. 1995).

We apply general principles of contract law to determine the obligations of each party under a purported plea bargain. See Brye, 146 F.3d at 1210. For such an agreement to be enforceable, the person who allegedly made the promise to the defendant must have been authorized to do so, and the defendant must have relied to his detriment on the promise. See United States v. Kettering, 861 F.2d 675, 677 (11th Cir. 1988).

There is no evidence that AUSA Horn authorized Agent Bulgrin to orally close a deal with Mr. Hurst. Indeed, Agent Bulgrin testified at sentencing that "[t]he only agreement . . . that was made with Mr. Hurst was that any information or assistance that he provided the Government would be relayed to Mr. Horn, and it would be up to the United States Attorney's office to determine what type of cooperation or plea agreement would be provided." Aplt. App. at 143. The record reveals that Agent Bulgrin engaged a series of discussions with the defendant and consulted AUSA Horn about proposed plea terms; however, these meetings never culminated in a formal offer and acceptance. Furthermore, Mr. Maxcey stated under oath that he did not tell AUSA Horn – either at the time the written agreement was drafted or after the government refused to sign it – that an oral bargain already had been struck. See id. at 130-31, 134. Thus, the government never entered a binding oral agreement with Mr. Hurst.

Mr. Hurst's contention that he detrimentally relied on the oral negotiations

by waiving his Fifth Amendment privilege against self-incrimination is not persuasive. Although he began to act as an informant after speaking with Agent Bulgrin, the Supreme Court has held that "[a] plea bargain standing alone . . . is a mere executory agreement which, until embodied in the judgment of a court, does not deprive the accused of liberty or any other constitutionally protected interest." Mabry v. Johnson, 467 U.S. 504, 507 (1984); see also United States v. Randel, 8 F.3d 1526, 1528 (10th Cir.1993). Following Mabry, several circuits have rejected estoppel arguments similar to Mr. Hurst's. See, e.g., Kettering, 861 F.2d at 678-79 (finding no merit in defendant's argument that disclosing crucial evidence to the government constituted prejudicial reliance); United States v. McGovern, 822 F.2d 739, 746 (8th Cir. 1987) (holding that permitting defendant to proceed to trial restored his constitutional rights when he had cooperated with government for more than a year before entering guilty plea); United States v. Coon, 805 F.2d 822, 825 (8th Cir. 1986) (concluding that defendant who relied on erroneous fine provision in plea agreement could be restored to status quo ante by being allowed to plead not guilty). According to the Eighth Circuit, "[t]he only change in position that can be considered 'detrimental reliance' is the actual entry of an involuntary guilty plea." Coon, 805 F.2d at 825.

Mr. Hurst's cooperation with the DEA did not foreclose his right to a jury trial once plea negotiations collapsed, and, if the district court deemed statements

that he made to the DEA involuntary, it could have excluded them had the case proceeded to trial. Id. (citing Bram v. United States, 168 U.S. 532, 542-43 (1897)). We decline to require specific performance of Agent Bulgrin's oral representations because they did not amount to an agreement and because Mr. Hurst did not detrimentally rely on them.

Mr. Hurst requests, in the alternative, that we instruct the district court to conduct a hearing in which the government must prove, by a preponderance of the evidence, that he breached the written contract by hindering the DEA operation. This form of relief is unwarranted. The proposed written agreement specifically provided that "[n]one of the terms . . . shall be binding on the Office of the United States Attorney for the Eastern District of Oklahoma until this agreement is signed by the defendant, defense counsel and the United States Attorney, or his authorized representative." Aplt. App. at 64 (emphasis added). AUSA Horn refused to sign the agreement once he learned that Mr. Hurst was obstructing the investigation. Analyzing the express language of the unexecuted document, we conclude that no agreement existed when Mr. Hurst entered his guilty plea to an indictment containing the conspiracy count. Accordingly, the district court had no need to hold a hearing on his failure to cooperate.

Mr. Hurst also asserts that the district court did not develop a sufficient factual basis to permit meaningful appellate review. Remand is proper where the

district court fails to "engage in clear and specific factfinding" because "we are neither equipped nor inclined to assume that role." Wolfe v. New Mexico Dept. of Human Services, 69 F.3d 1081, 1089 (10th Cir. 1995). In the context of plea negotiations, the Supreme Court has declared that a lower court is in a better position than an appellate court to decide whether a breach has occurred and what the appropriate remedy should be. See Santobello v. New York, 404 U.S. 257, 263 (1971). Yet, here, we have not only a copy of the written document, which plainly lacks the U.S. Attorney's signature, but also a transcript of the sentencing proceedings at which Agent Bulgrin and Mr. Maxcey testified about the oral plea negotiations and Mr. Hurst's failure to cooperate. The district court based its decision not to reconsider Mr. Hurst's motion to enforce the oral agreement on this testimony. The record thus affords ample opportunity to determine that no agreement existed.

Finally, Mr. Hurst challenges the district court's decision not to allow him to withdraw his guilty plea. We review such a decision for abuse of discretion, see United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992), and the defendant bears the burden of showing "a fair and just reason for the withdrawal of the plea." Wade, 940 F.2d at 1377. Because the district court neither failed to comply with Rule 11 nor erroneously declined to enforce the alleged oral agreement, its denial of Mr. Hurst's motion to withdraw his guilty plea does not

constitute an abuse of discretion.

## II.  Ineffective Assistance of Counsel

As part of his claim concerning the plea bargain, Mr. Hurst alleges that he was deprived of effective assistance of counsel when his first attorney advised him to plead guilty without seeking to enforce the proposed plea agreement. According to Mr. Hurst, Mr. Maxcey's rationale – that letting the agreement lapse would help the defendant qualify for acceptance of responsibility and safety valve departures – was "so implausible as . . . to be no strategic reason at all."  Aplt. Br. at 32-33.

In this circuit, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.  Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."  United States v. Gell-Iren, 146 F.3d 827, 831 (10th Cir. 1998) (quoting United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc)).  We have justified our preference for defendants to allege ineffective assistance in 28 U.S.C.§ 2255 proceedings by reference to the need for a fully developed factual record.  See Galloway, 56 F.3d at 1240.  Accordingly, we dismiss this claim without prejudice. See Gell-Iren, 146 F.3d at 832.

## III.  Criminal History Calculation

In 1993, Mr. Hurst was convicted of "wet reckless" driving.  The

imposition of his sentence was suspended, and he was placed on probation for two years, ordered to serve two days in jail, and fined $550.00. He now argues that the "wet reckless" conviction should not count toward his criminal history for the purposes of sentencing. He attempts to convince us that, because his sentence was suspended, he has "not yet [been] sentenced" under USSG § 4A1.2(a)(4) and that his conviction would only qualify for a criminal history point if it were "countable regardless of type or length." Section 4A1.2(c)(1) only classifies reckless driving as a "prior sentence" under specified conditions; thus, Mr. Hurst contends, his conviction does not satisfy the requirements of § 4A1.2(a)(4).

This argument is without merit. A suspended sentence falls under § 4A1.2(a)(3), rather than § 4A1.2(a)(4), and "shall be counted as a prior sentence" for the purposes of calculating a defendant's criminal history. See United States v. Hernandez, 160 F.3d 661, 670 (11th Cir. 1998) (one criminal history point appropriate where defendant's prior conviction had been suspended).

Mr. Hurst also incorrectly contends that "wet reckless" driving lies outside the rubric of countable offenses. In California, defendants may reduce a drunk driving charge to "wet reckless" through plea negotiations, although the resulting conviction carries the same weight as driving under the influence ("DUI") for the purpose of penalizing recidivists. See, e.g., People v. Claire, 229 Cal. App. 3d 647, 650 (Cal. Ct. App. 1991). According to Application Note 5 to USSG §

4A1.2, neither drunk driving convictions nor "similar offenses by whatever name they are known" are minor traffic infractions to be excluded from the criminal history under § 4A1.2(c)(1); indeed, we have previously held that the phrase "similar offenses" renders all "offenses involving driving and alcohol" eligible for one criminal history point. See United States v. Walling, 974 F.2d 140, 142 (10th Cir. 1992); see also United States v. Loeb, 45 F.3d 719, 722 (2nd Cir. 1995) (holding that offense of "driving while ability impaired" was properly counted).

Moreover, even if we consider Mr. Hurst's prior offense reckless driving, without regard for his intoxication, reckless driving does not constitute a minor traffic infraction under § 4A1.2(c)(1). See United States v. Ayala-Rivera, 954 F.2d 1275, 1277& n.4 (7th Cir. 1992). Section 4A1.2(c)(1) specifically provides that the court may count convictions for reckless driving "if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." Mr. Hurst satisfied the requirements of this subsection because he was placed on probation for more than one year. Reviewing the sentencing court's legal interpretation of the guidelines de novo and its factual findings for clear error, see United States v. Cuthbertson,138 F.3d 1325, 1326 (10th Cir. 1998), we conclude that it properly attributed one criminal history point to the wet reckless conviction.

Mr. Hurst also challenges the addition of two points to his criminal history

because he committed the charged offense while he was the subject of an allegedly invalid warrant. Section 4A1.1 instructs the sentencing court to add two points "if the defendant committed the instant offense while under any criminal justice sentence, including probation . . . or escape status." Mr. Hurst failed to spend two days in jail for the wet reckless conviction at the time specified by the SLOM court. As a result, his probation was revoked on January 13, 1994, and a warrant for his arrest was issued. Mr. Hurst was informed that the warrant would remain in effect until he offered the SLOM Court proof of time served. See Aplt. App. at 213. Thus, although he spent two days in county jail in Oklahoma, he was still wanted as a probation violator when the DEA apprehended him because he had not provided proper notice to the SLOM court. See id. According to § 4A1.2(m), a defendant "shall be deemed to be under a criminal justice sentence if that sentence is otherwise countable, even if that sentence would have expired absent such warrant." Because we have already concluded that wet reckless driving is a countable offense, we hold that Mr. Hurst was on escape status when arrested, despite the fact that he subsequently offered a mistake-ridden sworn statement attesting to his jail time. The sentencing court did not err in attributing two points to his escape status under § 4A1.1.

    AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge