# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2073

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jamal T. Norris, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 27, 2006
Filed: April 23, 2007

_____

Before LOKEN, Chief Judge, BRIGHT, WOLLMAN, ARNOLD, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER and BENTON, Circuit Judges, en banc.

_____

GRUENDER, Circuit Judge, with whom LOKEN, Chief Judge, WOLLMAN, ARNOLD, RILEY and SMITH, Circuit Judges, join.

The Government withdrew from a signed plea agreement with defendant Jamal T. Norris. Although the district court had not yet accepted Norris's plea of guilty, it granted Norris's motion for specific performance of the plea agreement. The Government appeals, arguing that because Norris's guilty plea was never accepted, Norris has no grounds upon which to enforce the plea agreement. For the reasons discussed below, we agree with the Government and reverse.

## I. BACKGROUND

The Government's prosecution of Norris arose from an extensive investigation into the activities of the 51st Street Crips street gang in Kansas City, Missouri. The investigation produced more than fifty suspects, and the potential prosecutions were distributed among several Assistant United States Attorneys ("AUSAs") in the Western District of Missouri. Norris originally was charged in an eight-count indictment with conspiracy to distribute more than 50 grams of cocaine base and other related offenses. The actions listed in the indictment were alleged to have occurred between April 1 and April 24, 2002. Norris initially pled guilty to one count but was allowed to withdraw his guilty plea in March 2003.

The Government, represented by AUSA Candace Cole, and Norris concluded negotiations on the plea agreement at issue in this appeal on September 8, 2003. The plea agreement called for Norris to plead guilty to Count One (conspiracy) and Count Eight (forfeiture) in return for the Government's promise "not to file any additional charges or pursue additional forfeiture action against defendant arising out of the present offenses or investigation in the Western District of Missouri." Under the agreement, Norris was expected to receive the mandatory minimum ten-year sentence.[1] A change-of-plea hearing was scheduled for September 12.

On the afternoon before the plea hearing, AUSA Charles Ambrose, who was assigned to review all cases associated with the Crips investigation, received an e-mail noting Norris's scheduled plea hearing the following day. Ambrose reviewed the plea agreement and compared it to a recently prepared comprehensive overview of gang activities uncovered during the investigation. He noted evidence that Norris was involved in a more significant criminal conspiracy in the two years prior to the April

---

[1]The plea agreement was made in accordance with Fed. R. Crim. P. 11(c)(1)(B), under which a sentencing "recommendation or request does not bind the court."

2002 conduct listed in his indictment. Ambrose instructed AUSA Kate Mahoney, who was to represent the Government at the plea hearing the following morning in Cole's absence, to make clear on the record before the court accepted Norris's plea that the Government construed its agreement "not to file any additional charges . . . arising out of the present offenses or investigation" to mean only that no additional charges would be filed for conduct occurring between April 1 and April 24, 2002, the time period of the actions alleged in the indictment. According to Mahoney, she decided not to discuss this interpretation with Norris's counsel prior to the next morning's plea hearing due to the lateness of the hour.

The plea agreement was executed by the parties on the morning of the change-of-plea hearing. At the hearing, the district court placed Norris under oath and began the standard inquiry into Norris's competence to plead guilty. Norris stated that, at the time of the charged conduct, marijuana use had rendered him unable to understand that his actions violated the law. The district court voiced concern to Norris's counsel as to whether Norris would admit guilt to the offense. Norris stated "Yeah, I did it . . ." and equivocated briefly before stating that at the time he "knew it was against the law." The plea hearing continued. After the district court had stepped through most of the requirements of Fed. R. Crim. P. 11(b)(1) and was preparing to discuss the provisions of the plea agreement with Norris, Mahoney interjected to state the Government's position that Norris could still be charged for actions occurring prior to April 2002. Norris's counsel immediately disagreed with that interpretation, and the district court recessed the hearing to allow the parties to discuss the matter. The parties could not reach a resolution. It is undisputed that the district court never accepted a guilty plea.

Norris was charged in a 20-count superseding indictment on October 9, 2003 with conspiracy to distribute marijuana, ecstasy and more than 50 grams of cocaine base, possession with intent to distribute these controlled substances and possession of firearms during and in furtherance of drug trafficking offenses. Norris moved to

compel specific performance of the previous plea agreement. The district court denied the motion on November 20, 2003, but, upon Norris's motion for reconsideration, granted the motion for specific performance on May 3, 2004. The district court, citing *United States v. DeWitt*, 366 F.3d 667 (8th Cir. 2004), held that the Government was bound by the terms of the signed plea agreement. Consequently, the district court dismissed the superseding indictment because it was based upon conduct covered by the Government's promise in the plea agreement not to file any additional charges.[2] The Government appeals, arguing that because Norris's guilty plea was never accepted by the district court, Norris has no grounds upon which to enforce the plea agreement.

## II.    DISCUSSION

We have jurisdiction over an appeal by the Government from an order dismissing an indictment under 18 U.S.C. § 3731. We review the enforceability of a plea agreement de novo. *United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996). "Contract principles often provide a useful means by which to analyze the enforceability of plea agreements and ensure the defendant what is reasonably due him in the circumstances." *United States v. McGovern*, 822 F.2d 739, 743 (8th Cir. 1987). "A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement and in accepting or rejecting the plea." *Id.*

---

[2]On appeal, the Government has abandoned its argument that the plea agreement's terms, even if enforced, did not foreclose additional charges against Norris for conduct that occurred prior to April 1, 2002.

As an initial matter, if the court accepts a defendant's guilty plea entered in reliance on a plea agreement or other promise that is then not honored by the Government, the defendant's due process rights are violated. *Mabry v. Johnson*, 467 U.S. 504, 507 (1984); *see also Santobello v. New York*, 404 U.S. 257, 261-62 (1971). No detriment, and thus no due process violation, occurs until the guilty plea is accepted by the district court. *Mabry*, 467 U.S. at 507 ("A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."). In the instant case, the district court did not accept Norris's guilty plea. Therefore, specific performance of Norris's plea agreement is not available on due process grounds under *Mabry*.[3]

Absent the district court's formal acceptance of the defendant's guilty plea or an express provision in the plea agreement requiring certain pre-plea performance, we have consistently declined to recognize any bases for detrimental reliance by the defendant that would warrant specific performance of the plea agreement on due process or any other grounds. We reaffirm the reasoning we originally adopted from the Fifth Circuit:

> [T]he realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially

---

[3]We note that an order for specific performance of the plea agreement by the Government is just one possible remedy for a due process violation. *See Mabry*, 467 U.S. at 510-11 n.11 ("[E]ven if respondent's plea were invalid, *Santobello* expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea; the Court made it clear that permitting Santobello to replead was within the range of constitutionally appropriate remedies.").

on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.

*McGovern*, 822 F.2d at 744 (quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980)); *see also United States v. Wessels*, 12 F.3d 746, 753 (8th Cir. 1993); *United States v. Walker*, 927 F.2d 389, 390 (8th Cir. 1991) ("Whatever benefits the parties intend to reap as a result of this [plea] agreement are contingent entirely upon the approval of the trial court."). We continue to recognize that this reasoning does not apply in "cases [that] either: (1) do not deal with plea agreements that required the court's acceptance under Rule 11," such as agreements that promise immunity from prosecution in return for testimony or cooperation, "or (2) involve the breach of an agreement after the court has accepted the defendant's guilty plea." *McGovern*, 822 F.2d at 745. Therefore, before the guilty plea is accepted, either party may withdraw from the plea agreement.[4]

The Government's right to withdraw from a plea agreement before it is accepted by the district court is qualified by the requirement that the Government gain no unfair advantage from the withdrawal in future proceedings against the defendant. *Wessels*, 12 F.3d at 753. For example, the Government may not make use at the defendant's subsequent trial of statements the defendant made during plea negotiations or in the course of cooperating with the Government under the terms of the plea agreement. *Id.* We have also stated that "[i]n an agreement that contemplates the defendant's *pre-plea* cooperation as well as his plea of guilty, the government

---

[4]Although *McGovern* referred to the district court's approval of the plea *bargain* as well as its acceptance of a guilty plea, we emphasize today that the district court's acceptance of the defendant's guilty plea is the point at which detrimental reliance becomes possible.

must, unless and until the court rejects the plea, honor in good faith its obligations under the agreement." *McGovern*, 822 F.2d at 744 (emphasis added).[5]

In the instant case, Norris argues that the Government may take unfair advantage of his sworn admission of guilt made during his uncompleted plea colloquy. Norris's admission would not be admissible in a subsequent proceeding against Norris in the Government's case-in-chief. Fed. R. Evid. 410(3). However, Norris contends that if he testifies at trial in a manner inconsistent with his admission during the plea colloquy, the Government is not precluded from using his admission against him for impeachment purposes or in a subsequent prosecution for perjury. *See* Fed. R. Evid. 410 (establishing that a statement made by the defendant "under oath, on the record and in the presence of counsel" during plea proceedings under Fed. R. Crim. P. 11 is admissible in a criminal proceeding for perjury).

---

[5]While pre-plea cooperation is not at issue in Norris's case, a review of our previous statements on the subject will prove useful in distinguishing *United States v. Young*, 223 F.3d 905 (8th Cir. 2000), relied upon by Judge Melloy in his dissenting opinion. A plea agreement that specifically requires *pre-plea* cooperation can be binding because it is obviously not one in which "neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea." *McGovern*, 822 F.2d at 744 (quoting *Ocanas*, 628 F.2d at 358). On the other hand, if a plea agreement contemplates the defendant's cooperation generally, without specifically requiring that the cooperation is to occur before the district court accepts the defendant's guilty plea, then the defendant cannot obtain specific performance of the plea agreement (absent the district court's acceptance of a guilty plea) unless the defendant shows that the Government has gained an unfair advantage over the defendant. *See Wessels*, 12 F.3d at 752-53 (declining to enforce a plea agreement contemplating cooperation by the defendant where the Government withdrew from the agreement prior to the district court's acceptance of the defendant's guilty plea and the defendant could not show that the Government gained an unfair advantage over him in subsequent proceedings).

While such use of Norris's admission would almost certainly constitute an unfair advantage, the Government has averred before the district court, and again at oral argument before this Court, that it will not use Norris's plea colloquy statements against him in any proceeding for any purpose whatsoever. Moreover, because Norris has argued only that the Government may use its withdrawal at some point in the future to gain an unfair advantage, the proper time for this Court to rule on the issue is after the Government's proceedings against Norris are complete. In any future proceedings against Norris, the district court will be able, upon objection, to exclude any evidence that represents an attempt to take unfair advantage of the withdrawn plea agreement. If the Government obtains a conviction against Norris through the use of such evidence, Norris may present the issue of unfair advantage on direct appeal of that conviction. *See Wessels*, 12 F.3d at 753 (examining the Government's conduct in the defendant's subsequent trial to determine if the Government gained an unfair advantage over the defendant in withdrawing its consent to a plea agreement).[6]

---

[6]Judge Melloy's dissenting opinion argues that Norris suffered a deprivation of due process because, although the Government will never be able to use Norris's admissions in court, the Government will now be cognizant of Norris's admissions as it proceeds with the prosecution, purportedly affecting both parties' strategy. However, Norris took the risk that the Government would become cognizant of his willingness to admit guilt, and a factual basis for it, to at least some charges when he agreed to participate in plea negotiations. Indeed, he already had entered and withdrawn one guilty plea before the events central to this case occurred. It is not clear how the Government would gain a strategic advantage in the instant case that it does not gain in any case involving plea negotiations that do not result in a guilty plea. In those cases, as in the instant case, the fact that the admissions are unusable in court if the defendant's guilty plea is not accepted by the district court prevents the Government from gaining an *unfair* advantage.

Judge Melloy's dissenting opinion would hold that the plea agreement in this case is enforceable under general contract principles because Norris "fully performed" his duties under the plea agreement.[7] Judge Melloy's dissent reads our decisions in *DeWitt*, 366 F.3d at 667, and *United States v. Young*, 223 F.3d 905 (8th Cir. 2000)*,* to imply that plea agreements should be enforced as simple contracts between the defendant and the Government.[8] This approach ignores the presence of a "contractual" condition completely independent of the defendant and the Government—the district court's independent power under Fed. R. Crim. P. 11 to accept or reject the defendant's associated plea. *Cf. Ocanas*, 628 F.2d at 358 ("The danger in a pure contractual approach to plea bargaining is that it may seduce one into thinking that the plea bargain involves only two parties, the prosecutor and the defendant, when in fact the trial court plays a critical role in the process."). Rule 11 serves notice to both parties to the plea agreement that the defendant's promise to forego his right to a jury trial and the Government's promise not to prosecute further any other covered acts of the defendant are merely executory until the district court accepts the defendant's associated guilty plea. As a result, Norris's performance at

---

[7]Although it would not affect the outcome of the case, we do not agree with the position taken in the dissenting opinions by Judge Melloy, post at 25, and Judge Bye, post at 20, that Norris had fully performed his duties under the plea agreement at the change-of-plea hearing. When the hearing ended, the district court had not yet addressed the factual basis for Norris's plea, *see* Fed. R. Crim. P. 11(b)(3), and Norris had not yet entered a guilty plea. (Norris's statement, "I did it . . . I knew it was against the law," arose during questioning from the district court about his mental competency at the beginning of the hearing after Norris equivocated about his mental state; the "it" had no antecedent other than the title of the charge.) Given Norris's equivocation early in the proceeding, one cannot say with certainty that he would have completed the proceeding by agreeing in open court with the recital of the underlying facts in the plea agreement and entering a guilty plea based upon them. This is all the more reason to draw a bright line at the district court's formal acceptance of the guilty plea.

[8]We note that Norris argues only that the plea agreement was enforceable under due process principles, not under general contract principles.

the change-of-plea hearing could not render the plea agreement enforceable absent the district court's acceptance of his plea.

*DeWitt* and *Young* are not inconsistent with the general rule that the court must have accepted a guilty plea before the parties may be bound to an associated plea agreement. *DeWitt* applied general contract principles to interpret and enforce a plea agreement that had been accepted by the district court. 366 F.3d at 669-70. Because *DeWitt* "involve[d] the breach of an agreement after the court ha[d] accepted the defendant's guilty plea," *McGovern*, 822 F.2d at 745, it is not relevant to our decision in the instant case.

The plea agreement in *Young* was enforced only to the extent that it specifically provided for pre-plea performance. In *Young*, the Government and defendant Young signed a plea agreement in which Young agreed to plead guilty in exchange for the Government's promise not to seek a particular sentencing enhancement and to enter into drug-quantity stipulations beneficial to Young. 223 F.3d at 907. As part of the plea agreement, the Government also agreed to support Young's release on bond pending his change-of-plea hearing in exchange for an affidavit from Young admitting the elements of the charged crime for use against him if he absconded before the hearing. *Id.* The plea agreement stated that if Young breached the plea agreement, "all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding." *Id.* at 910. Young indeed absconded from pre-trial supervision the day before his scheduled plea hearing. After Young was re-captured, the Government gave notice that it intended to introduce the affidavit at his trial, and Young moved to suppress the affidavit. We held that Young knowingly and voluntarily waived his right to exclude the affidavit as a statement made in the course of plea discussions.

-10-

*Id.* at 911. We also stated in conclusion that "the government is entitled to the benefit of its bargain and may use the affidavit in its case against Young." *Id.*

Although *Young* was decided on the basis of the defendant's waiver of his rights under Fed. R. Evid. 410, the defendant's waiver was contained in the plea agreement and operative only if the defendant breached the agreement. Therefore, *Young* implicitly found that the defendant was capable of breaching, and did breach, the plea agreement before the district court accepted his guilty plea. Importantly, however, the provision breached was not one in which "neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea." *McGovern*, 822 F.2d at 744 (quoting *Ocanas*, 628 F.2d at 358). Instead, the provision expressly contemplated performance that could only occur *before* the district court's acceptance of a guilty plea—the Government had to support the defendant's release on bond before his change-of-plea hearing, and the defendant had to provide the affidavit to be used if he absconded. Because this provision of the plea agreement expressly contemplated performance that could only occur prior to the district court's acceptance of a guilty plea, it was binding on Young, just as a defendant's required pre-plea cooperation under a plea agreement renders the agreement binding on the Government. *Id.* ("In an agreement that contemplates the defendant's pre-plea cooperation as well as his plea of guilty, the government must, unless and until the court rejects the plea, honor in good faith its obligations under the agreement.").[9]

---

[9]Judge Colloton's opinion concurring in the judgment, post at 14-15, would characterize *Young* purely as a waiver case, rather than as the enforcement of a bargain between the defendant and the Government, because the court's only authority to enforce the affidavit-for-release-on-bond bargain would have been an implicit use of federal common law. Because the waiver was operative only if the defendant breached the agreement, however, the result in *Young* was not possible without a finding that the court could enforce the affidavit-for-release-on-bond bargain. We see no reason to disavow the apparent use of federal common law to enforce the affidavit-for-release-on-bond bargain in *Young*, as there is no law expressly addressing

-11-

## III.  CONCLUSION

We hold that a defendant generally has no right to specific performance of a plea agreement where the Government withdraws from the agreement before the defendant's associated guilty plea is accepted by the district court.  We recognize exceptions to the general rule to the extent that the plea agreement specifically contemplates pre-plea performance or if the defendant shows that the Government has taken unfair advantage of its withdrawal from the agreement.  Because Norris meets neither exception, we vacate the district court's order granting Norris's motion for specific performance of the plea agreement and dismissing the superseding indictment.  We remand for further proceedings consistent with this judgment.

COLLOTON, Circuit Judge, with whom MURPHY, Circuit Judge, joins, concurring in the judgment.

In his response to the petition for rehearing in this case, Jamal Norris stated that he "agrees with the Government that the issue in this case was whether the Government's withdrawal from what it terms an 'executory' plea agreement, prior to

---

agreements ancillary to the entry of a guilty plea and no reason to treat such agreements as a nullity.  As Judge Colloton also recognizes, post at 13, such federal common law could never contravene the strictures of Fed. R. Crim. P. 11 regarding agreements to plead guilty.

Moreover, *Young* does not suggest that the presence of one provision contemplating pre-plea performance necessarily renders the entire plea agreement enforceable absent the district court's acceptance of the defendant's guilty plea. Courts must carefully consider the ancillary nature of any pre-plea exchanges relative to the core exchange of the defendant's promise to forego his right to a jury trial (and other associated rights) for the Government's promise not to prosecute further any other covered acts of the defendant, to make certain sentencing recommendations, or otherwise perform.

Norris' entry of a guilty plea or its actual acceptance by the district court, violated the Due Process Clause." I agree with Judge Gruender's opinion that the Due Process Clause provides no authority for ordering specific performance of the plea agreement signed by the parties on September 5, 2003. Because Norris's guilty plea was never accepted by the district court, the plea agreement standing alone was "a mere executory agreement," which did not deprive Norris of "liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507-08 (1984).

Accepting that *Santobello v. New York*, 404 U.S. 257, 262 (1971), extends to "cover the situation where the defendant has not yet entered the plea, but has relied on the bargain in such a way that a fair trial would no longer be possible," *Gov't of the Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980), I also concur with the plurality that the government has gained no unfair advantage, "such as by the use at trial of statements made during the course of the plea negotiations." *United States v. Wessels*, 12 F.3d 746, 753 (8th Cir. 1993). The district court may protect Norris's constitutional rights by prohibiting any evidentiary use of statements made in the plea agreement or at the aborted plea hearing. *Ante*, at 7-8; *United States v. Coon*, 805 F.2d 822, 825 (8th Cir. 1986); *United States v. Kettering*, 861 F.2d 675, 678-80 (11th Cir. 1988).

While Norris's constitutional claim fails for these reasons, the several opinions filed today raise the question whether there exists a non-constitutional rule of federal common law that creates for Norris a right to specific performance of the plea agreement. None of the opinions explains the potential source or scope of the court's authority to fashion common-law rules in this context. Whatever that authority may be, it may not be exercised to circumvent or conflict with the Federal Rules of Criminal Procedure, *see Carlisle v. United States*, 517 U.S. 416, 426 (1996), and the suggestion of a common-law right to specific performance in this case must fail in light of Rule 11(d)(1).

Rule 11(d)(1) provides that a defendant "may withdraw a plea of guilty before the court accepts the plea, for any reason or no reason." This rule necessarily implies that a defendant may withdraw from a plea agreement, as well as from a plea of guilty, at any time before the court accepts the plea. The rule further seems to imply that *neither* party is bound by a plea agreement until the guilty plea is accepted by the court, for the defendant's promise at any earlier stage is illusory. Even if the rule leaves a gap that may legitimately be filled by the courts in defining the ability of the government to withdraw from an executory plea agreement, we should not formulate an unbalanced common-law rule that binds the government to a plea agreement from which the defendant may withdraw for any reason or no reason.

Cases like *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004), do apply an interstitial federal common law to provide for uniform federal interpretation of plea agreements that have been accepted by a district court. *See United States v. Herrera*, 928 F.2d 769, 773 (6th Cir. 1991). They do so, however, for the purpose of determining the meaning of those agreements in order to enforce the substantive rule of law established by the Constitution and *Santobello*. These decisions do not support the wholesale adoption of general contract principles to govern plea agreements in criminal cases.

The decision in *United States v. Young*, 223 F.3d 905 (8th Cir. 2000), likewise does not support such a broad proposition. The issue presented in *Young* was whether the defendant *knowingly and voluntarily* waived his rights to exclude evidence under Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6). *Id.* at 909. The district court had ruled that Young was not aware of the nature of his rights under those rules when he executed a written waiver (which was included in a plea agreement). *Id.* at 910. Waiver is a unilateral act, and our court held that "Young's waiver of his plea-statement rights was knowing and voluntary." *Id.* at 911. The opinion includes no discussion of a federal common law of general contract principles, and I would not read the opinion implicitly to make a definitive statement

-14-

on an issue that was not raised. *See Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (holding that *stare decisis* not applicable unless issue was "squarely addressed" in prior decision); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents"); *Union Elec. Co. v. United States*, 363 F.3d 1292, 1297 (Fed. Cir. 2004) (holding that implicit rejection of argument by prior panel is not binding circuit precedent); *Indian Oasis-Baboquivari Unified School District No. 40 v. Kirk*, 91 F.3d 1240, 1244 (9th Cir. 1996) ("We have . . . declined to give controlling weight to our own implicit holdings."); *Grant v. Shalala*, 989 F.2d 1332, 1341 (3d Cir. 1993); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) ("a *sub silentio* holding is not binding precedent") (internal citation and quotation omitted); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions."); *cf. ante*, at 11 & n.9 (basing analysis of circuit precedent on what prior panel "implicitly found"); *post* at 22-23 (Melloy, J., dissenting).[10]

The parties in this case have not briefed whether there is a rule of federal common law (or constitutional law) that provides for specific enforcement of all agreements between a United States Attorney and a defendant that contemplate "pre-plea performance" or that do not require acceptance by the district court. *Cf. ante*, at 6-7, 11-12. Such agreements, and withdrawals from such agreements by the

---

[10]I do not "characterize *Young* purely as a waiver case . . . because the court's only authority to enforce the affidavit-for-release-on-bond bargain would have been an implicit use of federal common law." *Ante*, at 11 n.9. I characterize *Young* as a waiver case because the only issue raised and decided was whether Young's waiver of rights under the plea-statement rules was knowing and voluntary. I do not "disavow" anything in *Young*; I simply focus on the court's express holding, which said nothing about an "apparent use" of federal common law. *Id*. I defer consideration of the *dicta* set forth in Judge Gruender's opinion to future cases in which the issues are presented and argued.

defendant or the government, may arise in a variety of circumstances, *e.g.*, *Coon*, 805 F.2d at 822-25, none of which is presented by Norris. Because a decision about such matters is unnecessary to resolution of this case, *see ante*, at 7 n.5, 12 n.9, I would refrain from broad pronouncements in those areas.

For these reasons, I concur in the judgment reversing the order of the district court.

BRIGHT, Circuit Judge, dissenting.

I join Judge Bye and Judge Melloy in dissent.

I focus on the precise facts in this case, which, as Judge Bye states, raise a unique and troubling situation that has not previously come before this court. See Slip. Op. at 19. Norris had performed his part of the plea agreement when the government voiced its reinterpretation of an essential term, effectively abandoning its promise to perform. See Slip Op. at 24-25. As Judge Melloy states, the Government gained an unfair advantage from Norris's admission of guilt during the Federal Rule of Criminal Procedure 11 colloquy and has thus violated Norris's right to due process. See Slip Op. at 26-28.

Accordingly, I agree with Judge Bye and Judge Melloy that, on the facts of this case, the government should be bound by its word and not allowed—without any good reason—to abandon its prior promise during the change-of-plea hearing.

Justice Oliver Wendell Holmes wrote, "Men must turn square corners when they deal with the Government." Rock Island, A. & L.R. Co. v. United States, 254 U.S. 141, 143 (1920). I agree. But the government, particularly in criminal cases that threaten to deprive a defendant of his liberty, must also turn square corners when dealing with its citizens. In this case, the government's conduct was inexplicable and

fell short of the fair treatment that is expected from a representative of the United States.

The government reneged on its word. That omission is chargeable to the United States Attorney's Office for the Western District of Missouri and threatens to make the word of that office not worth the paper on which it is written. Fortunately for the country, I do not believe that federal prosecutors in other districts are in the mold of the Western District of Missouri.

Whether in criminal or civil litigation, or otherwise in the practice of law, a lawyer's word ought to be his or her bond.

BYE, Circuit Judge, with whom BENTON, Circuit Judge, joins, dissenting.

I join in the result proposed by Judge Melloy's dissent. Norris's signed and nearly accepted plea agreement should be enforced. I write separately because I believe we should reach this result for a different reason, and I disagree with the size of the step Judge Melloy would have us take.

Judge Gruender's plurality opinion starts with <u>Mabry v. Johnson</u>, 467 U.S. 504 (1984), and notes Norris has not triggered a due process right to enforce his plea agreement, as it was not yet accepted by the district court. In <u>Mabry</u>, the Supreme Court established a bright line rule when it held: "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." <u>Id.</u> at 507. What the plurality does not consider, is that <u>Mabry</u> was a habeas corpus case. The petitioner needed to implicate the Constitution in order to sustain his claim. Such is not the case here. The question

-17-

thus becomes: Can we enforce Norris's plea agreement in the face of <u>Mabry</u>?  I believe we can.

It is true we have previously used language which seemingly precludes a departure from the <u>Mabry</u> bright line rule, even outside of the habeas corpus context. <u>See</u> <u>United States v. McGovern</u>, 822 F.2d 739, 746 (8th Cir. 1987) ("[A] defendant is not justified in relying on the terms of the plea agreement until the judge approves it and accepts the guilty plea."); <u>United States v. Walker</u>, 927 F.2d 389, 390 (8th Cir. 1991) ("Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea.  Neither party is justified in relying substantially on the bargain until the trial court approves it.").  As Judge Melloy makes clear, however, both <u>McGovern</u> and <u>Walker</u> are factually distinguishable from the present case.  The district court in <u>McGovern</u> rejected the plea agreement.  <u>McGovern</u>, 822 F.2d at 742.  In contrast, in the instant case, there was absolutely no indication the district court would have rejected the plea.  In fact, as the district court had already fulfilled most of its Rule 11 requirements before the government interrupted with its "clarification," there is every indication the court would have accepted the plea agreement.  In <u>Walker</u>, the plea agreement had already been accepted by the district court, and the issue was whether the government had breached the agreement because the probation office acted contrary to its terms at the district court's direction.  <u>Walker</u>, 927 F.2d at 390.  We found the district court had essentially rejected the plea agreement when it directed the probation office to act contrary to its terms.  <u>Id.</u> at 391.  Again, in the instant case, the facts strongly suggest the district court would have accepted rather than rejected the plea agreement.  More importantly, in <u>Walker</u> we held: "As a *general rule*, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court."  <u>Id.</u> at 390 (emphasis added).  This language does not present the bright line rule of <u>Mabry</u>.  Our use of the phrase "general rule" leaves open the possibility of an

-18-

exception.  The instant case presents a prime situation in which to invoke such an exception.

We have never before been confronted by a situation like the one presented here—where the defendant and government have signed a plea agreement; the defendant has literally reached the last point in the proceedings before the court accepts his plea; the defendant has relied on the agreement such that he testified under oath about his guilt; and the court has shown every indication it will accept the plea. These facts, combined with the improper behavior of the government, justify a deviation from the general rule.

Judge Melloy's dissent circumvents <u>Mabry</u> by presenting another way to look at plea agreements—as simple contracts which become enforceable upon signing. Even in the face of <u>United States v. Young</u>, 223 F.3d 905 (2000), this presents an extension of our law.  I am not prepared to take such a large step.  Utilizing this analysis would undoubtedly broaden the enforcement of plea agreements.  As soon as there is a signed plea agreement between the government and a defendant, this contract could be enforced and there would be no need for detrimental reliance. Drawing the line this early in the process creates an imbalance of power.  While the government would be bound at the time of signing, the defendant could not be similarly bound with regard to his plea.  <u>See</u> Fed. R. Crim. P. 11(d) ("A defendant may withdraw a plea of guilty . . . before the court accepts the plea, for any reason or no reason.").  In addition, the government raises the legitimate question of whether, under this analysis, an agreement might be enforced even in the face of new evidence.[11]

_____

[11]In his first footnote, Judge Melloy claims we do not have to decide what will happen should the government obtain new information about a defendant after the plea agreement has been signed, because in the instant case the government did not obtain new information about Norris.  I respectfully disagree.  By not deciding, we would be further muddying the waters of this already unclear area of the law, and

I agree with the plurality insofar as it reaffirms that a plea agreement is more than simply a contract. We have adopted language from the Fourth Circuit explicitly accepting that not only do federal plea agreements implicate individual constitutional rights, they actually implicate much more: "[W]ith respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." United States v. Thompson, 403 F.3d 1037, 1039 (8th Cir. 2005) (quoting United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986)) (internal citation and quotation marks omitted). In addition, as Judge Melloy reminds us, guilty pleas also carry great significance—significance which triggers protection from the Due Process Clause of the Constitution. In this case and on these facts, we should keep these concerns about honor, justice, and fundamental fairness paramount in our minds and enforce the plea agreement. We should do so because Norris fulfilled his end of the bargain.

Rule 11 implies that the plea agreement's terms are fixed when the hearing begins. "The parties must disclose the plea agreement in open court when the plea is offered, unless the court for good cause allows the parties to disclose the plea agreement in camera." Fed. R. Crim. P. 11(c)(2). "The requirement of the Rule for full disclosure was intended, not only to permit the court to pass on the validity of the plea, but also to insure that all the terms of the agreement will be fully understood and agreed to by both parties." United States v. Roberts, 570 F.2d 999, 1006 (D.C. Cir. 1977). The plea agreement is reached and signed prior to the Rule 11 proceedings. Rule 11 proceedings begin:

> If it has not previously been established, determine whether the plea is being made pursuant to a plea agreement of any kind. If so, require

_____

would provide virtually no guidance to AUSAs and district courts regarding what they should do in the face of new evidence after a plea agreement has been signed.

-20-

disclosure of the terms of the agreement (or if the agreement is in writing, require that a copy be produced for your inspection and filing). See Fed. R. Crim. P. 11(e)(2).

Benchbook for U.S. District Court Judges § 2.01(B) (4th ed. 2000). This is done even before the oath is administered to the defendant. Id. at § 2.01(C). Here, the agreement was not fully disclosed until after Norris completed most of the Rule 11 inquiry. Fixing the agreement's terms at the hearing's outset also implements the Rule's mandate that "[t]he court must not participate in these [plea agreement] discussions." Fed. R. Crim. P. 11(c)(1). See United States v. Gallington, 488 F.2d 637, 640 (8th Cir. 1973) ("Judges are not to participate in the bargaining; their role is to be limited to acceptance or rejection of agreements after a thorough review of all relevant factors.").

In light of the foregoing, we must consider the timing of AUSA Mahoney's interjection. Here, the government, in attempting to "clarify" a provision in the plea agreement during the colloquy, impermissibly involved the district court in the negotiation process. Whether AUSA Mahoney was seeking the court's support in her interpretation of the provision is uncertain. Nevertheless, this court should not reward her behavior.

I am not accepting Judge Melloy's complete departure from the Mabry line of cases. Instead, I am advocating a narrow exception to this court's "general rule." The line should be drawn, not at a defendant's signing of his plea agreement, but at his standing in court under oath and doing everything he promised to do under that agreement. My opinion would be very different had AUSA Ambrose or AUSA Mahoney chosen any time prior to the Rule 11 proceedings to inform Norris and his counsel of the government's new interpretation of the plea agreement. Because they waited until the end of the process during the Rule 11 proceedings and after Norris fulfilled his duties under the agreement, Norris deserves the benefit of his bargain. As such, I heartily agree with Judge Melloy's proposed result.

For the above reasons, I dissent.

-21-

MELLOY, Circuit Judge, with whom BRIGHT, Circuit Judge, joins, dissenting.

I believe that the Government has gained an unfair advantage by withdrawing from its plea agreement with Norris after he pleaded guilty under oath. Therefore, I respectfully dissent.

Initially, I must note that I am not persuaded by Judge Gruender's plurality opinion and Judge Colloton's concurrence in their attempts to circumvent what I find to be irreconcilable circuit law. Despite the language in *United States v. McGovern*, 822 F.2d 739, 744 (8th Cir. 1987), *United States v. Walker*, 927 F.2d 389, 390 (8th Cir. 1991), and *United States v. Wessels*, 12 F.3d 746, 753 (8th Cir. 1993), we have repeatedly said that "[p]lea agreements are contractual in nature, and should be interpreted according to general contract principles." *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004); *see United States v. Young*, 223 F.3d 905, 911 (8th Cir. 2000) (using contract interpretation to determine that "the government is entitled to the benefit of its bargain"). I recognize that the factual situations in *DeWitt* and *Young* differ from the facts in this case. However, I believe these cases stand for the proposition that plea agreements are contracts, and therefore should be governed as such.

In particular, I do not believe *Young* is as easily distinguishable as the opinions of Judge Gruender and Judge Colloton suggest. I read *Young* for the proposition that Young's withdrawal from the plea agreement itself (not any pre-plea agreement) was the triggering event, or breach, that allowed the Government to reap "the benefit of its bargain." *Young*, 223 F.3d at 911. The court in *Young* made no mention of pre-plea agreements; in fact, the thrust of *Young* was whether the plea agreement as a whole was a valid agreement. Once the court determined that the plea agreement was valid, traditional contract principles applied, and Young's failure to follow through on his agreement to plead guilty resulted in a breach. The attempt to reconcile *Young*

with the concept that either party may withdraw from a plea agreement prior to its acceptance by the district court is belied by the penultimate paragraph of *Young*, where this Court expressed its holding:

> We are satisfied that, when Young signed the plea agreement, he was aware of the benefits he was securing, the rights he was foregoing, and the consequences of breaching the agreement. We find no evidence that he entered into the agreement involuntarily or unknowingly. Thus, the government is entitled to the benefit of its bargain . . . .

*Id.*

When comparing the situation in *Young* with the situation here, it is evident that Norris should also receive the benefit of his bargain. In the *Young* case, Young and the Government entered into a valid plea agreement. Young breached the plea agreement before the court accepted it. Because the Government was willing to perform, the court determined that the Government was entitled to the benefit of its bargain. Here, it was the Government that breached before the court accepted the agreement, and it was Norris who was willing to perform. If we were willing to abide by traditional contract principles in *Young*, we must apply those principles here, as well.

We do not have to decide the simple issue of whether *Young* applies when the roles are reversed, however, because Norris went further than simply signing a plea agreement.[12] At his change-of-plea hearing, Norris went to the podium, the court

---

[12]Nor do we have to decide the respective rights of the parties when the Government obtains new information about a defendant after the plea agreement is signed. No such new information was obtained in this case. As the district court found, and Judge Gruender's plurality opinion discusses, the decision to not honor the unexecuted plea agreement resulted from a file review by AUSA Ambrose, not the receipt of new evidence. Moreover, in this case the Government went ahead and

-23-

swore him in, and the court "address[ed] [him] personally in open court." Fed. R. Crim. P. 11(b)(1). The court then led him through the Rule 11(b)(1) requirements: it made sure Norris understood the nature of the charge he was pleading to and the maximum possible penalty; it told him that anything he said during the course of the proceeding that is later determined to be false could subject him to prosecution for perjury; it determined that Norris knew what he did was against the law; it determined that Norris knew the pros and cons of pleading guilty to this charge; it determined that Norris understood he was waiving his right to a jury trial; it explained that counsel would be appointed for him; it told him that he had the right to subpoena witnesses on his on behalf at trial, and to confront and cross-examine witnesses that the Government would call; and it determined that he knew he was giving up the right to appeal his guilty finding to a higher court. The court then asked Norris's attorney to summarize the terms of the plea agreement. The plea agreement required Norris to plead guilty to Count One of the indictment: conspiracy to distribute more than fifty grams of crack cocaine. Norris did that, stating, "I did it . . . . I knew it was against the law." The court then had Norris confirm that Norris's signature was on the bottom of the plea agreement and that he was given sufficient time to read and discuss it with his attorney. It was at this point, when the court had nearly completed its Rule 11 inquiry, that the Government interjected and withdrew from the

agreement. The plea agreement in this case was no longer executory; Norris had fully performed under the agreement.

The plurality opinion makes broad statements based on both Supreme Court and Eighth Circuit law that plea agreements have no real meaning "unless and until the trial judge approves the bargain and accepts the guilty plea." *McGovern*, 822 F.2d

---

signed the agreement on the morning of the plea proceeding after the file review and with full knowledge of all relevant information. Certainly, nothing new was learned in the few minutes between the execution of the agreement and the plea proceeding where the contract was repudiated.

at 744. It points to no cases, however, in which the defendant has *actually performed* his part of the bargain. This is what makes the present case fundamentally different from *Mabry v Johnson*, 467 U.S. 504 (1984), and any case we have decided, where one of the parties to the plea agreement withdrew prior to one party actually performing all that he promised to do in exchange for the other party's promise.

While I believe contract-law principles alone warrant specific performance of the agreement in this case, the fact that this is a contract between the Government and a criminal defendant regarding his liberty carries additional significance. We require more than just contract law protections in plea bargain cases in order to safeguard the defendant's constitutional rights. *See United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996) (stating that a plea agreement "must be attended by constitutional safeguards to ensure a *defendant* receives the performance he [or she] is due") (emphasis added). Because plea agreements, "necessarily implicate[] the integrity of the criminal justice system," the Government must be held "to a greater degree of responsibility" during plea negotiations than the defendant. *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004) (citing, in part, *McGovern*, 822 F.2d at 743) (internal marks omitted).[13]

---

[13]Judge Gruender's plurality opinion also cites *McGovern* for the proposition that plea agreements implicate the integrity of the criminal justice system. One can only wonder how the plurality's analysis enhances the integrity of the criminal justice system when it acknowledges that the Government attorneys knew they would not honor the agreement as-written prior to its signing. As the plurality opinion notes, AUSA Ambrose decided the evening before the plea proceeding, and before the signing of the agreement, that he was imposing an interpretation of the agreement that was clearly at odds with its express language. Yet neither he nor AUSA Mahoney felt compelled to advise the defendant that the Government would not honor the agreement as drafted prior to its signing, or to inform the court of its decision prior to plea proceedings; AUSA Mahoney waited until the defendant had essentially completed the Rule 11 colloquy to convey this crucial change in interpretation.

As a result of the unique setting for such agreements, the Government's breach has constitutional significance. Although I am willing to accept the proposition that the mere signing of a plea agreement does not carry constitutional import, I believe that the entry of a guilty plea by a defendant has independent constitutional ramifications. *See Hall v. Luebbers*, 341 F.3d 706, 716 (8th Cir. 2003) ("If the defendant has not pled guilty *or* the trial court has not accepted a plea and entered judgment, the defendant has not been deprived of his constitutional rights.") (emphasis added). The entry of a guilty plea requires a court's involvement and it includes the waiver, under oath, of several important constitutional rights. It also strongly implicates the defendant's liberty interest. Once the court is involved and has accepted the defendant's waiver of his constitutional rights, even if not taking the formal step of accepting the plea agreement itself, the Government can no longer withdraw from the agreement. At this point, the advantage the Government gains from the guilty plea becomes unfair, see Wessels, 12 F.3d at 753, and violates the defendant's right to fundamental fairness under the Due Process Clause. U.S. Const. amend. V.

As the Court stated in *Santobello v. New York*, 404 U.S. 257 (1971), all of the benefits of plea bargaining "presuppose fairness in securing agreement between an accused and a prosecutor." *Id.* at 261. While there is "no absolute right to have a guilty plea accepted" by the court, a defendant's plea "must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." *Id.* at 261-62. According to the Court in *Santobello*,

---

The plurality accepts the government's proposition that it may withdraw from a written signed plea agreement for any reason, or no reason at all, at any time prior to its acceptance by the district court. Assuming that to be true, as the plurality opinion holds, the credibility and good faith of the U.S. Attorney is seriously called into question when it exercises that discretion. It is hard to envision how such a loss of credibility by the U.S. Attorney enhances the integrity of the criminal justice system.

the plea bargaining phase

> must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Id.* at 262.

Norris's plea, which was tendered to the court, was based on the Government's promise that it would not "file any additional charges or pursue additional forfeiture action against defendant arising out of the present offenses or investigation." Norris had seen the evidence the Government had against him for his acts in 2001, and he agreed to the Government's offer based on this information. Thus, according to *Santobello* and *Mabry*, the Government must now perform its end of the bargain. This proposition is particularly true under the facts of this case, where the Government attorneys knew at the time the agreement was signed that they did not intend to perform as promised, yet did not disclose that fact to the defendant, his attorney, or the court until after the Rule 11 proceeding was essentially complete.

Judge Gruender's plurality opinion holds that Norris cannot yet prove that the Government has gained an unfair advantage by its failure to meet its end of the bargain. It states that "the proper time for this Court to rule on the issue is after the Government's proceedings against Norris are complete." The plurality admits that use of Norris's admission of guilt by the Government "would almost certainly constitute an unfair advantage," and they are undoubtedly correct.[14] However, the Government

---

[14]Judge Gruender's plurality opinion and Judge Colloton's concurrence both take the Government at its word when it promised this Court that it will not use Norris's plea colloquy statements against him in any proceeding for any purpose. However, the Government candidly admitted at oral argument that its promise to not

has already gained an advantage by convincing Norris to admit, in open court, his part in a conspiracy to distribute more than fifty grams of crack cocaine and provide factual details of his involvement.  This information will inform every decision the Government and Norris now make: the Government's decision to offer Norris another plea agreement, the terms of that agreement, decisions the Government makes regarding sentencing recommendations, and any decisions the Government and Norris would make should Norris decide to go to trial.  The Government would gain that advantage, I admit, even if Norris had merely signed the plea agreement.  Had Norris withdrawn from the plea agreement before he pleaded guilty, any advantage gained by the Government would not have been unfair.  Similarly, had new evidence been discovered relating to Norris's case, or had the Government withdrawn prior to the Rule 11 inquiry, any advantage would not have been unfair because Norris would have known that this was a risk.  However, because the Government waited until Norris had fully performed under the agreement before withdrawing, the advantage it gained in this case is unfair.

Further, the plurality opinion's purported remedy of allowing Norris to appeal this issue in the future has very little practical effect.  By the time Norris is "allowed" to argue unfair advantage, he will likely have already entered into a new plea agreement because he is now faced with a twenty-count indictment, far more prison time, and a significant amount of evidence against him.  Not only will his next plea likely have a clause forbidding him from appealing under most circumstances, it will likely be held valid and binding by the future appellate court because it will have been entered into knowingly and voluntarily.  *See Mabry*, 467 U.S. at 508-509 ("It is only when the consensual character of the plea is called into question that the validity of

---

use Norris's statements is on no higher legal footing than the promises made in the written plea agreement, which the Government filed with the court and then repudiated.   Under the analysis of the plurality's opinion and Judge Colloton's concurrence, the Government's promise not to use the statements against Norris would be no more enforceable than the breached promise in the plea agreement.

a guilty plea may be impaired."). The Court in *Santobello* did include as a possible remedy giving the defendant the chance to withdraw his guilty plea and enter into a new one; however, the Court assumed that the defendant in that case would "plead anew to the original charge." *Santobello*, 404 U.S. at 263 n.2. Whatever option Norris now chooses will place him in a worse position than he was before the Government withdrew its consent to the plea agreement. Because it waited to withdraw that consent until after Norris had fully performed, I believe the Government deprived Norris of his constitutional right to due process.

For the foregoing reasons, I part ways with the majority, and I would grant Norris's motion for specific performance of the plea agreement.

_____